## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

**ORAL ARGUMENT REQUESTED**          **COMPLAINT**

**JURY DEMAND**

**903 WEST WASHINGTON LLC,**
**207 SECOND STREET LLC,  and**          **Case No.**
**321 WEST MASON LLC,**          **Hon.**
 **on behalf of themselves and**
**others similarly situated.**

          **Plaintiffs,**

**v.**

**CITY OF JACKSON, a municipal corporation**
**AND THE FOLLOWING INDIVIDUALS SEVERALLY,**
**IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY:**

**MATTHEW HAGERTY, city attorney, MARK**
**PORTERFIELD, assistant city attorney, FRANK**
**DONOVAN, former Chief Building Official, BRIAN**
**TAYLOR, Chief Building Official, RICARDO**
**O'CONNOR, Chapter 14 Code enforcement official,**
**MICHAEL BRANDT, Chapter 14 Code enforcement**
**official, MARK FISH, Electrical Inspector, SVEN**
**HARRISON, former Chapter 14 Code enforcement official,**
**SHANE LAPORTE, former Chapter 14 Code enforcement**
**official, LYDELL TANNER, Chapter 14 Code enforcement**
**official, DAVID BATTERSON, Chapter 14 Code**
**enforcement official, DENNIS DIFFENDERFER, former**
**Chapter 14 Code enforcement official, WILLIAM MILLS,**
**former Chapter 14 Code enforcement official, SCOTT**
**BARNETT, former Chapter 14 Code enforcement official,**
**CHARLIE WILLIAMS, former Chapter 14 Code**
**enforcement official, TIMOTHY PICKETT, former**
**Chapter 14 Code enforcement official, JERRY**

1

**STACKHOUSE, former Chapter 14 Code enforcement official, DONALD KITTLE, former Chapter 14 Code enforcement official, JAYSON STREBE, former Chapter 14 Code enforcement official, and TIMOTHY BASORE, former Chapter 14 Code enforcement official.**

**Defendants.**

_____

THE TOIVONEN LAW OFFICE
John W. Toivonen (P73130)
Counsel for Plaintiffs
120 N. Washington, Suite 300
Lansing, MI 48933
 (517) 402-5229
 (888) 459-8529

_____

<u>**CLASS-ACTION COMPLAINT**</u>

903 West Washington LLC, a Michigan limited liability company, 207 Second

LLC, a Michigan limited liability company and the 321 West Mason LLC, a

Michigan limited liability company, on behalf of all others similarly situated, by

and through the undersigned attorney, JOHN WILLIAM TOIVONEN, states for

this Complaint as follows:

## I.   PARTIES

1.   **903 West Washington LLC** is a Michigan Limited Liability Company
    whose registered office is located in the City of Ann Arbor, County of
    Washtenaw, and State of Michigan.

2.   **207 Second LLC** is a Michigan Limited Liability Company whose
    registered office is located in the City of Ann Arbor, County of
    Washtenaw, and State of Michigan.

3.   **321 West Mason LLC** is a Michigan Limited Liability Company
    whose registered office is located in the City of Ann Arbor, County of
    Washtenaw, and State of Michigan.

4.   Plaintiffs bring this class action on behalf of themselves, and others
    similarly situated, who have been the victims of a Chapter 14 ordinance
    void for vagueness, nefariously enforced by the city of Jackson in a
    deliberate ***"Kafkaesque"*** fashion thereby depriving homeowners of
    residential property within the city of their Fourth, Fifth, and

Fourteenth Amendment constitutionally mandated civil rights.

5.     Defendant, City of Jackson, is a municipal corporation located within

Jackson County, in the State of Michigan.

6.     Pursuant to 42 USC § 1983, "**Every person who, under color of**

**any statute, ordinance, regulation, custom, or usage, of any**

**State or Territory or the District of Columbia, subjects, or**

**causes to be subjected, any citizen of the United States or other**

**person within the jurisdiction thereof to the deprivation of any**

**rights, privileges, or immunities secured by the Constitution and**

**laws, shall be liable to the party injured in an action at law, suit**

**in equity, or other proper proceeding for redress, except that in**

**any action brought against a judicial officer for an act or**

**omission taken in such officer's judicial capacity, injunctive**

**relief shall not be granted unless a declaratory decree was**

**violated or declaratory relief was unavailable.**"

7.     The natural persons who are named as defendants in this complaint

do not enjoy qualified immunity as the City Attorney's office,

Building Department management and Code enforcement officials,

worked in concert, under color of law, to deprive property owners

within the city limits of Jackson of their civil right to have, hold and

to enjoy the benefit of real property ownership.

4

## II.     JURISDICTION AND VENUE

8.    Plaintiff incorporates the preceding paragraphs.

9.    Jurisdiction by this Court over Plaintiffs' constitutional claims is

proper pursuant to 28 USC § 1343 and 28 USC § 1331.

10.   Supplemental jurisdiction over any state law claims is proper

pursuant to 28 USC § 1367.

11.   Venue is proper in this District pursuant to 28 USC § 1391

because the district is where the Defendants reside, where a

substantial part of the events and omissions occurred giving rise

to Plaintiff's claims, and where a substantial part of all properties

subject to the action are located.

12.   As additional Class Plaintiffs are identified, this District will

remain the most convenient venue in which all future cases can

be considered and consolidated, as necessary.

## III.    NATURE OF THE ACTION

13.   Plaintiff incorporates the preceding paragraphs.

14.   This action is brought on behalf of a class of:

a. All persons and entities who currently own or at one time owned

Non Owner Occupied Residential Property located within the city

of Jackson and who were illegally invoiced for inspection fees

from a Constitutionally void for its vagueness Chapter 14

inspection regimen from the effective date of the ordinance on

March 22, 2012 and up to and including July 6, 2021 and subsequently paid them.

b. All persons and entities who refused to sign a consent to search pursuant to a Chapter 14 inspection demand by the city whereby an exterior code deficiency inspection was then conducted by the City from the public sidewalk, without providing a copy of the deficiency report to the homeowner within the statutorily Chapter 14 mandated time period for notice of violation which impaired their ability to appeal such deficiency determination to an impartial board, and the person or entity was then financially penalized for the refusal to sign a consent form, paid the penalties and subsequently consented to a search .

c. All persons and entities who have refused to sign a consent to search pursuant to a Chapter 14 inspection demand by the city and the person or entity was financially penalized for the refusal to sign a consent form and which the city subsequently obtained and executed an ex parte search warrant without affording the subject of the search the opportunity to be heard in front of a neutral magistrate and the person or entity subsequently paid the penalties and search warrant fees.

d. All persons and entities who currently own or at one time owned Foreclosed, Vacant or Abandoned real property located within the

city of Jackson and who were coerced under penalty of law to
register their real property and were illegally invoiced for
registration fees, subsequently paid those fees, from a
Constitutionally void Chapter 14 Foreclosed, Vacant, or
Abandoned Property Registration ordinance which compelled a
registrant , under threat of fine and penalty, to surrender their
Fourth Amendment rights by proving to the city, with their
property registration, "A statement allowing authorized staff of
the city to enter the premises for purposes of inspection", for an
Article of the Chapter 14 ordinance which did not statutorily
mandate for an interior inspection of foreclosed, vacant, or
abandoned Property .

e. All persons and entities who currently own or at one time owned
Foreclosed, Vacant or Abandoned real property located within the
city of Jackson and who were coerced under penalty of law to
remunerate the city for "monitoring" fees from a Constitutionally
void for its vagueness a Chapter 14 ordinance which did not
provide a definition of "monitoring" or a statutorily mandated
interior or exterior inspection schedule.

f. All persons and entities who owned Foreclosed, Vacant or
Abandoned real property from March 22, 2012 to July 6, 2021,
located within the city of Jackson, and who were the victim of a

Constitutionally void for its vagueness Chapter 14 Non Owner

Occupied Residential Property Inspection regimen illegally applied

by the City to their Foreclosed, Vacant or Abandoned unoccupied

real property which resulted in the subsequent demolition of that

property.

15.    The State of Michigan under the Home Rule City Act (MCL

117.1 et seq.) permits municipal corporations like the City to

adopt certain laws, codes, or rules for building maintenance

issues.

16.    MCL 117.3 (K) specifically addresses the adoption of certain

building codes:

Except as otherwise provided under the Stille-DeRossett-
Hale single state construction code act, 1972 PA 230, MCL
125.1501 to 125.1531, a city may adopt a law, code, or rule
that has been promulgated and adopted by an authorized
agency of this state pertaining to fire, fire hazards, fire
prevention, or fire waste, and a fire prevention code,
plumbing code, heating code, electrical code, building code,
refrigeration machinery code, piping code, boiler code,
boiler operation code, elevator machinery code, an
international property maintenance code, or a code
pertaining to flammable liquids and gases or hazardous
chemicals, that has been promulgated or adopted by this
state, by a department, board, or other agency of this state,
or by an organization or association that is organized and
conducted for the purpose of developing the code, by
reference to the law, code, or rule in an adopting ordinance
and without publishing the law, code, or rule in full. The
law, code, or rule shall be clearly identified in the ordinance
and its purpose shall be published with the adopting
ordinance. Printed copies of the law, code, or rule shall be
kept in the office of the city clerk, available for inspection

by, and distribution to, the public at all times. The
publication shall contain a notice stating that a complete
copy of the law, code, or rule is made available to the public
at the office of the city clerk in compliance with state law
requiring that records of public bodies be made available to
the general public.

17.   The city has adopted and enacted a number of codes and

ordinances pursuant to the Home Rule City Act and MCL 117.3

(K).

18.   The City has adopted and enacted a number of such ordinances and

regulations, one of which is titled the **Non-Owner Occupied**

**Residential Rental Property Registry** of the Code of Ordinances of

the City of Jackson, Michigan, Article I, Sections 14-1, *et seq*.

("Article" or "Ordinance").

19.   The city has adopted and enacted a "findings and purpose" definition

for the enforcement of the Chapter 14 Article I Non-Owner-Occupied

Residential Property Registry:

**Sec. 14-2. Findings and purpose.**

The city council finds that there are **non-owner-occupied**
residential dwellings or units in the city that have become
unsafe, unsanitary and unsecure due to deterioration. The
city council finds that it is in the best interests of the health,
safety and welfare of the city and its residents to require
that all **non-owner-occupied** residential dwellings or units
be registered and inspected **to ensure safe, secure and
sanitary living conditions for those *residing in* non-
owner-occupied residential dwellings or units.** The city
council also finds that by requiring property registration of
all **non-owner-occupied** residential dwellings or units in
the city, the continuing maintenance of safe and quality

9

non-owner-occupied residential dwellings and units will be maintained and property values will be enhanced. The city council also finds that requiring designation of a responsible local agent will ensure timely notice under the law to the property owner and assist code enforcement inspectors in their duties to inspect non-owner-occupied dwellings or units.

(Ord. No. 2012-03, § 1, 2-21-12)

20. The city has also adopted and enacted ordinances that regulate the operation of non-owner-occupied housing within the city. Pursuant to these ordinances, an owner of non-owner-occupied real property whose desire is to rent their property must register the property with the city.

**Sec. 14-4. Property registration required.**

(1) No person shall rent, lease, offer for rent or lease, or allow another person to occupy any **non-owner**-occupied residential dwelling or unit without a property registration issued by the city.

(2) Upon the adoption of this chapter, any owner of a **non-owner**-occupied residential dwelling or unit must register the **non-owner**-occupied residential dwelling or unit within one hundred twenty (120) days of the effective date of this chapter. Upon expiration of the initial one hundred twenty-day period, an owner of a **non-owner-occupied** residential dwelling or unit must register the non-owner-occupied residential dwelling or unit within forty-five (45) days of the **non-owner**-occupied residential dwelling or unit becoming **non-owner occupied**.

(Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

21. The city has also adopted and enacted ordinances that regulate the

operation of non-owner-occupied housing within the city. Pursuant to these ordinances, the issuance of a non-owner-occupied residential property registration shall be issued subject to the following terms and conditions:

### Sec. 14-7. Issuance of property registration.

A property registration shall be issued if the applicant meets all of the following requirements:

(1)  An application form is properly submitted;

(2)  An acknowledgment of local responsible agent form is submitted and signed by the local responsible agent, if required;

(3)  All application fees are paid;

(4)  All outstanding inspection fees and late fees are paid;

(5)  Payment in full of all of the following fines, fees and debts relating to the property being registered owed to the city that are currently due or past due, including but not limited to:

    a. Outstanding water or sewer bills;

    b. All charges for mowing, cleanup, weed or debris removal; and

    c. Any fees, penalties, or debts of any sort arising from provisions of the housing code, including any blight violations.

(Ord. No. 2012-03, § 1, 2-21-12)

22.     The city has adopted and enacted an ordinance which "presumes" when

residential real property is subjected to the jurisdiction of the Chapter 14

Article I Non-Owner-Occupied Residential Property Registry.

**Sec. 14-13. Presumption of non-owner-occupied residential dwelling or unit.**

**Whenever a residential dwelling or unit used for or intended for residential purposes is vacant or occupied by anyone other than the owner of record as shown in the records of the city assessor, there shall exist a presumption that the dwelling or a portion of the dwelling is a non-owner-occupied residential dwelling or unit regardless of whether monetary compensation is exchanged between the owner and the person(s) occupying the residential dwelling or unit.** In addition, there shall be a presumption that the dwelling is non-owner occupied if the property or unit was rented, leased, let, or registered under this article within the last six (6) months, and the owner has not properly applied for a change of use.

(Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2015-19, § 2, 12-15-15)

23.     Chapter 14 Article I Non-Owner-Occupied Property Registry Section

14-13 "Presumption of Non-Owner-Occupied Property" "presumes"

that an owner-occupied residential property is vacant when the owner

of record is not in residence without providing, in Chapter 14 Article I

of the Non-Owner-Occupied Residential Property Registry, a definition

of "vacant". This begs the following questions: Is an owner-occupied

structure considered a Non-Owner Residential Property by the City of

Jackson should the owner of record depart the residence temporarily to

engage in a personal errand? Is owner occupied residential real property in the city of Jackson subject to a Chapter 14 Non-Owner-Occupied Residential property registration requirement if the owner of record should decide to leave their abode for a prolonged period of rest and relaxation thereby leaving their abode temporarily non-owner occupied and therefore subject to the terms and conditions of being a Non-Owner-Occupied Property? Is an owner of record required to register and submit to a city inspection regimen for engaging in an occupation that may require absences of varying and undetermined lengths of time from their owner occupied residential real property? Any reasonable person of common intelligence is undeniably unable to decipher from such vague, arbitrary, and capricious wording in Article I Chapter 14-13 that states "Whenever a residential dwelling or unit used for or intended for residential purposes is vacant…., there shall exist a presumption that the dwelling or a portion of the dwelling is a non-owner occupied residential dwelling or unit" of whether or not an owner occupied property is considered, pursuant to Chapter 14-13, a Non Owner Occupied Residential Property and therefore subject to the jurisdiction of registering the structure as Non Owner Occupied Property, pursuant to 14-4, and then subsequently enduring an invasion of their privacy that is required with the Chapter 14 Section 42 Non Owner Occupied inspection regimen without the city providing a

definition in Chapter 14 Article I of  what is the meaning of "vacant".

24.  The city has adopted and enacted a maintenance code for the **Chapter 14 Non-Owner-Occupied Residential Property Registry** which is titled**, ARTICLE II-MIMIMUM HOUSING STANDARDS**

25.   The city has adopted and enacted an applicability ordinance Chapter 14 Non-Owner-Occupied Residential Property Registry Article II-Minimum Housing Standards which is titled**:**

**Sec. 14-29. Applicability.**

> The provisions of this article shall apply to all existing structures used, designed and constructed for the purpose of or intended to be used for human habitation. The minimum standards required under this Code are designed to prevent fire hazards, structural deterioration, inadequate light, air and heat, and unsanitary and overcrowded conditions **which constitute a menace to the safety, health and welfare of the *occupants*.**

> (Ord. No. 2003.12, § 2, 9-2-03; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

26.  The city has adopted and enacted an inspection regimen for the **Chapter 14 Non-Owner-Occupied Residential Property Registry Article II-Minimum Housing Standards** which is titled**:**

**Sec. 14-42. Inspections.**

(1) In order that they may perform their duties **to safeguard the health, safety and welfare of the *occupants* of dwellings** and of the general public, the chief building official, chief of police and fire official **are hereby authorized to make or cause to be made such**

14

**inspections of dwellings or dwelling units as are necessary to enforce the provisions of this article.** The inspections that are authorized for the purpose of enforcement of the provisions of this article shall be made at a reasonable time. The word "dwelling" as used in this paragraph shall include, but not be limited to, those categories of structures defined in section 14-26.

(2)  The chief building official, chief of police and fire official shall inspect buildings and structures regulated by this article. Inspections may be conducted even though a current certificate of compliance is on record with the department of neighborhood and economic operations.

(3)  **An inspection shall be conducted in the manner best calculated to secure compliance with this article and appropriate to the needs of the community**.

(4)  In an emergency situation, the chief building official, chief of police and fire official have the right to enter at any time. for purposes of this article, an emergency shall exist when the chief building official, chief of police or fire official has reasonable grounds to believe that a condition hazardous to health or safety exists on the premises and requires immediate attention.

(5)  **In a nonemergency situation or where the owner or occupant of any dwelling demands a warrant for inspection of the premises, the chief building official, chief of police or fire official shall obtain a warrant from a court of competent jurisdiction.**

(Code 1977, § 8.604; Ord. No. 93-22, § 1, 10-12-93; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

27.  The city has adopted and enacted an ordinance which allows for unpaid inspection fees to be assessed against an inspected property as a special assessment which is titled:

**Sec. 14-43. Inspection fees.**

(1) The owner of a dwelling unit shall be charged by the chief building official for inspections conducted pursuant to this article in accordance with the resolutions adopted by the city council. The owner or occupant of property whose dwelling is inspected pursuant to a housing rehabilitation program or other housing assistance program of the city shall not be charged for such inspection.

(2) Reserved.

(3) **If the owner fails to pay an invoice for inspection fees directed to him or her under subsection [1] of this section within thirty (30) days, the city may cause the costs reflected in said invoice to be assessed against the premises as a special assessment, pursuant to serial section 273 of the City Charter, and may institute an action against the owner for the collection of said costs in any court of competent jurisdiction. However, the city's attempt to collect such costs by any process shall not invalidate or waive the lien upon the premises.**

(4) All revenues raised shall be placed in a housing code enforcement fund. No part of the funds held in the housing code enforcement fund may be transferred to the general operating fund for any purpose.

(Code 1977, § 8.605; Ord. No. 91-14, § 1, 4-23-91; Ord. No. 92-8, § 1, 5-19-92; Ord. No. 92-17, § 1, 10-20-92; Ord. No. 93-22, § 3, 10-12-93; Ord. No. 98-23, § 1, 8-18-98; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

28. The city has adopted and enacted an ordinance, which was effective October 23, 2014, which allows for an appeal of cited Chapter 14 Article II Code violations which is titled Sec 14-51. Appeal.

**Sec. 14-51. Appeal.**

(a)   The building code board of examiners and appeals may grant a

16

specific variance to any requirement of this article if the literal application of a requirement would result in a practical difficulty for compliance with particular section(s) at issue. **An owner, or agent thereof, whose building has been inspected, may apply to the building code board of examiners and appeals for a hearing <u>for reconsideration of the notice of violation(s) and any correction order(s) contained therein.</u>** No variance shall be granted if same would result in either the purpose or the intent of the particular section(s) at issue being abrogated. The building code board of examiners and appeals may attach in writing any conditions in connection with the granting of a variance that, in its judgment, are necessary to protect the health, safety and welfare of the people of the city. In authorizing a variance, the board shall require such evidence as it may deem necessary to ensure that the purpose and intent of the particular section(s) at issue will be satisfied. In reviewing a request for a variance, the board shall consider the following to determine whether practical difficulty exists:

(1)     Whether there are exceptional or extraordinary conditions applying to the property that do not apply to other similar properties;

(2)     Whether the exceptional or extraordinary conditions resulted from the action of the property owner;

(3)     Whether there exists alternative or equivalent methods or

17

materials that would allow the purpose and intent of the particular section(s) at issue to be satisfied;

(4)     Whether strict compliance with the ordinance [this chapter] requirements would be unreasonably burdensome on the property owner;

(5)     Whether strict compliance with the ordinance [this chapter] requirements would cause a financial hardship for the property owner;

(6)     Whether the granting of a variance would result in a substantial detriment to the property; and

(7)     Whether the variance requested is the minimum variance possible that would still allow the purpose and intent of the particular section(s) at issue to be met.

(8)     An owner, or agent thereof, whose building, structure, or dwelling has been determined to be unfit for human habitation by the chief building official and where a notice to vacate has been served under section 14-46, may appeal the determination of the chief building official to the building code board of examiners and appeals for a hearing to determine if the notice to vacate should be upheld or discharged. The building code board of examiners and appeals shall uphold the notice to vacate if it determines that the building, structure, or dwelling is unfit for human habitation

18

or discharge the notice to vacate if it determines that the building, structure, or dwelling is fit for human habitation.

(Code 1977, § 8.613; Ord. No. 90-18, § 1, 9-11-90; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2014-23, § 2, 9-23-14, eff. 10-23-14)

29. The city has adopted and enacted an ordinance, which statutorily replaced Chapter 14-51 Appeal, and which was effective October 23, 2015, and which allows only for a "variance" of cited Chapter 14 Article II Code violations which is titled Sec 14-51. Variance.

**Sec. 14-51. Variance.**

(a)     **An owner, or agent thereof, whose structure(s) has been inspected, may apply to the building code board of examiners and appeals for a hearing, no later than ninety (90) days after the notice of violation is issued, for <u>consideration of receiving a specific variance to a requirement</u> of this article that is identified as a violation or correction order in the notice of violation(s).** The building code board of examiners and appeals may grant a specific variance to any requirement of this article if the literal application of a requirement would result in practical difficulty for compliance with the particular section(s) at issue. No variance shall be granted if same would result in either the purpose or the intent of the particular section(s) at issue being abrogated. The building code board of examiners and appeals may attach in writing any conditions in connection with the granting of

19

a variance that, in its judgment, are necessary to protect the health, safety and welfare of the people of the city. In authorizing a variance, the board shall require such evidence as it may deem necessary to ensure that the purpose and intent of the particular section(s) at issue will be satisfied. In reviewing a request for a variance, the board shall consider the following to determine whether practical difficulty exists:

1) Whether there are exceptional or extraordinary conditions applying to the property that do not apply to other similar properties;

2) Whether the exceptional or extraordinary conditions resulted from the action of the property owner;

3) Whether there exists alternative or equivalent methods or materials that would allow the purpose and intent of the particular section(s) at issue to be satisfied;

4) Whether strict compliance with the ordinance [this chapter] requirements would be unreasonably burdensome on the property owner;

5) Whether strict compliance with the ordinance [this chapter] requirements would cause a financial hardship for the property owner;

6) Whether the granting of a variance would result in a substantial detriment to the property; and

7) Whether the variance requested is the minimum variance possible

20

that would still allow the purpose and intent of the particular section(s) at issue to be met.

8) An owner, or agent thereof, whose building, structure, or dwelling has been determined to be unfit for human habitation by the chief building official and where a notice to vacate has been served under section 14-46, may appeal the determination of the chief building official to the building code board of examiners and appeals for a hearing to determine if the notice to vacate should be upheld or discharged. The building code board of examiners and appeals shall uphold the notice to vacate if it determines that the building, structure, or dwelling is unfit for human habitation or discharge the notice to vacate if it determines that the building, structure, or dwelling is fit for human habitation.

(Code 1977, § 8.613; Ord. No. 90-18, § 1, 9-11-90; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2014-23, § 2, 9-23-14, eff. 10-23-14 Ord. No. 2015-16, § 2, 9-22-15

30. The city of Jackson, demonstrating willful, malicious, and nefarious intent ignores the Constitutional Right of Due Process and tampers with the Chapter 14-51 "Appeals" ordinance thereby deliberately diminishing the Constitutional right of Due Process of a homeowner to appeal and possibly vacate a Chapter 14 Code violation and its remedy, to that of one which only statutorily

provides for the limitations of a variance of such a Chapter 14 Code

violation or its remedy.

31. The city has adopted and enacted certain maintenance codes for the

**Chapter 14 Non-Owner-Occupied Residential Property**

**Registry Article II-Minimum Housing Standards:**

**Sec. 14-72. Exterior building envelope.**

Unless otherwise provided, no person shall occupy or let to another for occupancy, any dwelling or dwelling unit for the purpose of living therein which does not comply with the following requirements:

(1)   Structure. Every foundation, wall and **roof shall be reasonably weatherproof**, and rodent-proof, shall be capable of privacy and kept in good repair.

  a.   The foundation elements shall adequately support the building at all points of the building footprint.

  b.   Every exterior wall shall be free of holes, breaks, loose or rotting boards or timbers, and any other condition which might admit rain, dampness or rodents to the interior portions of the walls, or which might provide harborage for insects or other vectors of disease. Exterior walls and wood trim shall be well and sufficiently painted so as to prevent same from deteriorating and becoming havens for rodents, insects and other vectors of disease. Defective paint that is suspected of containing lead levels in excess of allowable limits shall be treated or removed in accordance with established H.U.D. and E.P.A. guidelines.

  c.   **The roof system shall be free of defects of any kind** including, but not limited to, deflection that is not a consequence of, or results in, an unsafe condition, the admission of moisture, damage to structural members,

sheathing, flashings, roof covering, ventilation, and drainage systems.

    **d. Gutters and downspouts shall be provided so as to prevent rainwater from causing dampness in the walls or interior portion of the building and to prevent ground water from migrating to or entering into the basement walls or foundation.**

(2) *Stairs and porches.* Every inside and outside stair, every porch and every appurtenance thereto shall be so constructed as to be safe to use and capable of supporting the loads to which they are subjected and shall be kept in sound condition and in good repair. In the case of stairs with four (4) or more risers, the stairway shall be equipped with a full-length handrail and/or guardrail. Such handrails and guardrails shall be installed in accordance with the state building code or the state residential code.

(3) *Openings.* Every window, exterior door, and basement hatchway and their frames shall be maintained in good repair, operate as designed and intended, and shall be weatherproof, rodent-proof, and waterproof.

(4) *Chimneys.* All chimneys shall be maintained in sound condition, free of holes and breaks and operate as intended. All chimneys shall be properly capped and supplied with an appropriate cleanout. The top of the chimney shall be at least two (2) feet above any point on the roof within a ten-foot radius of the chimney but shall not be less than three (3) feet above the highest point where the chimney passes through the roof.

(5) *Street numbers.* All buildings shall bear distinctive street numbers at least four (4) inches in height at or near the front entrance of such building. The owners of all buildings shall cause the correct numbers to be placed thereon. All numbers shall be facing the street, shall be of a contrasting color and in such a position as to be plainly visible from the street. The use of Arabic numerals is required.

(Code 1977, § 8.621; Ord. No. 2012-03, § 1, 2-21-12)

32. The city has adopted and enacted certain maintenance codes for the

**Chapter 14 Non-Owner-Occupied Residential Property**

**Registry Article II-Minimum Housing Standards:**

**Sec. 14-101. Minimum requirements.**

Unless otherwise provided, no person shall occupy or let to another for occupancy, any dwelling or dwelling unit for the purpose of living therein which does not comply with the following requirements:

(1) *Windows.* Every habitable room and bathroom shall have at least one (1) window or skylight facing directly to the outdoors or to a court. The minimum total window area measured between stops for every habitable room shall be at least eight (8) percent of the total floor area of such room. All windows shall be fully operational, and the sashes shall be capable of remaining open with approved sash control devices. This requirement is waived if the room is provided with adequate artificial lighting.

(2) *Ventilation.* Every habitable room and bathroom shall have at least one (1) window that can be easily opened and will adequately ventilate the room. The total openable window area in every habitable room shall be at least four (4) percent of the total floor area of such room. This requirement is waived if the room is provided with adequate mechanical ventilation.

(3) *Egress window*. Any room that may be used for sleeping purposes shall be supplied with an egress window in compliance with the state building code, the state residential code, or state rehabilitation code.

(4) *Light and ventilation in public halls and stairways.* Every public hall and stairway serving dwellings, excluding one- and two-family dwellings and townhouses, shall be adequately lighted at all times, and shall be provided with as much ventilation to the outer air as required by the state building code. This language shall not be construed to exempt one- and

two-family dwelling units and townhouses from the requirements of the state residential code.

(5) *Storm-screen units.* The owner of a dwelling shall be responsible for all storm-screen units.

a. *Doors.* Every uninsulated door opening directly from any dwelling or dwelling unit to the outdoors used for ventilation purposes shall be supplied with a storm-screen unit. Every insulated door shall be provided with a screen only. Every hinged screen or storm-screen door in a dwelling or dwelling unit shall have a self-closing device in good working condition.

b. *Windows.* Every uninsulated window opening directly from any dwelling or dwelling unit to the outdoors that may be used for ventilation purposes shall be supplied with a storm-screen unit. **Every insulated window shall be provided with a screen only.** Each basement or cellar window, when open for ventilation, shall be screened and every other opening to a basement which might provide an entry for rats or other vermin shall be supplied with a screen or other device as to effectively prevent their entrance.

(Code 1977, § 8.619; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

33.    The city of Jackson has adopted and enacted an ordinance for

foreclosed, vacant and abandoned real property, which is titled,

**Chapter 14 Article VI "Foreclosed, Vacant and Abandoned**

**Property Registry Ordinance"**, Chapter 14 Code of

Ordinances of the City of Jackson, Michigan, Article VI,

Sections 14-400 et seq. ("Article" or "Ordinance".)

25

(Ord. No. 2012-4, § 1, 3-7-12; Ord. No. 2021-03, § 2, 6-8-21)

34.   Pursuant to 14-402 of Article VI of the city of Jackson Ordinances "Foreclosed, Vacant, and Abandoned Property Registry definitions:

*Vacant property* means a parcel of real property that has been **unoccupied** continuously for a period of thirty (30) days or more, and is either:

(1)   Subject to foreclosure as defined in this article;

(2)   Has been abandoned by the owner;

(3)   Is under a condemnation notice or order to vacate;

(4)   Is not in compliance with the housing, electrical, mechanical, plumbing, or building codes;

(5)   Has one (1) or more broken or boarded windows;

(6)   Is open to casual entry or trespass;

(7)   Is deteriorating due to a lack of maintenance or neglect;

(8)   Has a building or structure for which a building permit has expired that is partially completed and is not fit for human occupancy;

(9)   Contains a structure that is structurally unsound;

**(10)   Has utilities disconnected or not in use;**

(11)   Has taxes in arrears for more than one (1) year; or

(12)   Is a potential hazard or danger to the safety of persons.

(Ord. No. 2012-4, § 1, 3-7-12; Ord. No. 2020-09, § 2, 7-14-20; Ord. No. 2021-03, § 2, 6-8-21)

35.   The city of Jackson, mandates by ordinance, as a precondition of registering a Foreclosed, Vacant or Abandoned Property, pursuant to Chapter 14 Section 403 (3) h, that a registrant of such property shall provide the city with **"A statement allowing authorized staff of the city to enter the premises for purposes of inspection",** thereby unlawfully statutorily requiring that the

26

owner of the property waive their Constitutional Fourth

Amendment Right to be secure in their persons, houses, papers,

and effects against unreasonable searches and seizures and

Fourteenth Amendment Right to due process or face fines and

penalties.

36. This egregious and Unconstitutional action promulgated by the

city of Jackson in Chapter 14 Section 403 (3) h is exactly why

the Fourth Amendment was designed- so as to guard against the

kind of arbitrary and invasive searches and seizures that were

systematically deployed by the British to suppress dissent in the

Thirteen Colonies. The Fourth Amendment was a product of

colonial revulsion toward "writs of assistance" and "general

warrants" used by agents of the British Empire to suppress its

colonial citizens. What is particularly disturbing, and repugnant,

in this instance, is that city of Jackson mandates by legislative

fiat, Chapter 14 Section 403 3 (h), that real property owners in

Jackson are coerced to act as a co-conspirator with the city of

Jackson in the stripping away of their Constitutional right to be

free from arbitrary, capricious and unlawful searches or endure

city enforcement action that may levy a fine upon them for

refusing to aid and abet the city of Jackson with implementing

its unconstitutional action.

27

37.   The 321 West Mason LLC purchased 321 West Mason, Jackson,

MI. 49201 at the Jackson County property tax foreclosure

auction on October 7, 2013.

38.   The city of Jackson unlawfully compelled the 321 Mason LLC,

pursuant to threat of immediate demolition of the structure

located at 321 West Mason, to submit to an Chapter 14 Article II

Non-Owner Occupied Residential Rental Property Registry

inspection regimen, even though the structure was defined by

city ordinance as vacant, pursuant to Chapter 14-402 of the city

of Jackson code of ordinances, and which the city had full

knowledge of building being unoccupied for a substantial period

of time as the property was  registered as a Foreclosed, Vacant,

Abandoned property with the city, and the structure had not had

any functioning utility services, including, but not limited to,

water service, which is supplied directly by the city of Jackson,

for nearly seven years. The entire point of the Applicability of

Chapter 14-29 Article II Minimum Housing Standards is

designed to protect the **"safety, health, and welfare of the**

**occupants."** <u>See</u> Foreclosed, Vacant, Abandoned registration set

forth as Exhibit "A", Exterior and Interior Photographs set forth

as Exhibits "B, C, D, and E", and the History Detail Report for

Water Utility Service set forth as Exhibit "F".

28

39.     The Chapter 14 Non-Owner Occupied Residential Property Registry

14-2 is unambiguously clear by both its title and findings that all **non-owner occupied** residential dwellings or units be registered and

**inspected to ensure safe, secure and sanitary living conditions for**

**those *residing in non-owner occupied* residential dwellings or units**

and that its applicability, pursuant to Chapter 14-29, is for minimum

maintenance standards **which constitute a menace to the safety,**

**health, and welfare of the *occupants*.**   Furthermore, Article II

Chapter 14-42 (1) Inspections codifies **that an inspection is**

**authorized to "safeguard the health, safety and welfare, of the**

**occupants of dwellings".** Chief Building Official Brian Taylor

conducted the inspection.

40.     The city of Jackson alleged from the inspection that was

arbitrarily, capriciously and illegally conducted by Chief

Building Official Brian Taylor that the roof of the structure

needed to be replaced, even though no evidence existed that

demonstrated the roof was leaking. Therefore, the roof

substantially complied **with Sec. 14-72, of the city of Jackson,**

**Chapter 14 Article I Non-Owner Occupied Residential**

**Rental Property Registry inspection regimen which**

**mandates in subsection (1), of the exterior building envelope,**

**that the roof "shall be reasonably weatherproof".** The owner

of 321 West Mason, the 321 Mason LLC, refused to replace the roof as ordered by the chief city inspector, Brian Taylor, as it was "reasonably weatherproof." <u>See</u> Chapter 14 Inspection Findings set forth as Exhibit "G".

41.   The property located at 321 West Mason is subsequently demolished by the city of Jackson on December 13, 2018 after unlawfully applying an arbitrary, capricious, and constitutionally void for its vagueness ordinance that specifically addresses Non Owner Occupied Residential structures only, for the failure of the owner to replace a roof that was not leaking and therefore substantially complied with Sec. 14-72 (1) of the city of Jackson Non-Owner Occupied Residential Property maintenance code requiring that a roof be "reasonably weather proof". The Chapter 14 Non-Owner-Occupied Minimum Housing Standards Article II code does not attempt to define what is "reasonably weatherproof".

42.   In an attempt to unjustly enrich itself by collecting funds twice for the cost of the demolition of 321 West Mason from both a federal government program that provided the city of Jackson with demolition funding of the structure at 321 West Mason, *"Help For Hardest Hi*t", and from the owner of 321 West Mason, the city of Jackson presents the owner of 321 West

Mason, the 321 West Mason LLC, with an invoice for (Thirty

one thousand two hundred eighty dollars) ($31,280.00) for the

cost of the unlawful and illegal demolition of the structure. See

Customer Statement for Demolition Costs set forth as Exhibit

"H".

43.   On September 14, 2021, city of Jackson Code Enforcement

Official Michael Brandt appeared at 10:30 a.m. to conduct a

Chapter 14 Non-Owner-Occupied Residential Property Registry

inspection at 207 Second Street. Loren Romain, the property

manager and LLC member, places Brandt on notice that the

property has been unoccupied for nine years, registered as a

vacant property with the city and is still unoccupied, and has not

had city-supplied water service, or any other utilities for

approximately nine years. Romain, then informs Brandt as the

property is not occupied, it is therefore exempt from the Chapter

14 Article I Non-Owner-Occupied Residential Property Registry

inspection regimen. Romain demands Brandt obtain a search

warrant to conduct an inspection and subsequently refuses entry

to Brandt to either the building grounds or interior of the

structure. Brandt then informs Romain that he will conduct a

Chapter 14 Article II Non-Owner-Occupied Residential Property

inspection of the exterior of the dwelling from the public

sidewalk and proceeds to do so. Brandt then distributes to

Romain a red tag notice which has "Lock Out" written on it. The

city subsequently invoices the owner of the property a Two

Hundred Fifty-Five-dollar ($255.00) Chapter 14 inspection

"Lock Out" fee. <u>See</u> Chapter FVA Registrations for 207 Second

set forth as Exhibit "I", the History Detail Report for Water

Utility Service set forth as Exhibit "J", the Initial Inspection

Notice for the 09/14/2021 Inspection set forth as Exhibit "K",

and the Red Tag "Lock Out" for Said Inspection Date set forth

as Exhibit "L".

44.     On November 2, 2021, City of Jackson Code Enforcement

Officer Michael Brandt appears again at 207 Second street to

conduct a Chapter 14 Article II Non-Owner-Occupied

Residential Property Registry inspection. Loren Romain, the

property manager, for the second time places Brandt on notice

that the property has been unoccupied for nine years, registered

as a vacant property, is still vacant, and that all utility service to

the structure has been inactive for approximately nine years,

including city supplied water service. Romain, for the second

time, places Brandt on notice that as the property is not occupied

it is therefore exempt from the Chapter 14 Article II Non-

Owner-Occupied Residential Property Registry inspection

regimen. Brandt is persistent with Romain that he must conduct

a Chapter 14 Non-Owner-Occupied Residential Property

Registry inspection and Romain refuses entry to Brandt for the

second time to either inspect the building grounds or interior of

the structure. Romain again demands of Brandt that the city

obtain a Search Warrant to conduct an inspection. Brandt

provides to Romain a red tag notice which has "2nd Attempt

Initial Housing Inspection" written on it. The city subsequently

invoices the owner of the property a Two Hundred Fifty-Five

dollar ($255.00) "Lock Out" fee. See the Final Notice of

Inspection Prior to Search Warrant for the 11/02/2021 Inspection

set forth as Exhibit "M", and the Red Tag "Lock Out" for Said

Inspection Date set forth as Exhibit "N".

45.   On March 16, 2022, City of Jackson Code Enforcement Official

Michael Brandt appears for the third time at 207 Second Street

to conduct a Chapter 14 Article II Non-Owner-Occupied

Residential Property Registry inspection. Romain, the property

manager, for the third time places Brandt on notice that the

property has been unoccupied for nine years, registered as a

vacant property, is still unoccupied, and that all utility service to

the structure has been inactive for approximately nine years,

including city supplied water service. Romain, for the third time,

33

places Brandt on notice that as the property is not occupied it is therefore exempt from the Chapter 14 Article II Non-Owner-Occupied Residential Property Registry inspection regimen. Brandt is persistent with Romain that he must conduct a Chapter 14 Non-Owner-Occupied Residential Property Registry inspection and Romain refuses entry to Brandt for the third time to either inspect the building grounds or interior of the structure. Romain again demands of Brandt that the city obtain a Search Warrant to conduct an inspection. Brandt provides to Romain a yellow tag notice which has "2nd Attempt Initial Housing Inspection-Lock out" written on it. The city subsequently invoices the owner of the property a Two Hundred Fifty-Five dollar ($255.00) "Lock Out" fee. See the Final Notice of Inspection Prior to Search Warrant for the 03/16/2022 Inspection set forth as Exhibit "O", and the Yellow Tag "Lock Out" for Said Inspection Date set forth as Exhibit "P".

46.     On or about April 24, 2022, the 207 Second LLC receives notice via first class mail, from the city of Jackson, dated April 6, 2022, that a Chapter 14 Non-Owner-Occupied Residential Property inspection is scheduled for May 26, 2022 at 9:00 a.m. The city generated correspondence declares that "Failure by you or your agent to appear and allow voluntary access will require the

execution of an **ADMINISTRATIVE SEARCH WARRANT**

to gain entry and proceed with the inspection". The city also

posts notice on a stake in the front yard of the property of the

impending inspection. See the Execution of Search Warrant for

05/26/2022 set forth as Exhibit "Q", the Yard Posting of the

Scheduled Administrative Search Warrant set forth as Exhibit

"R", and the Municipal Billing Invoice set forth as Exhibit "S".

47.    In a serial and blatant disregard for the U.S Constitution's Fourth

Amendment, Fourteenth Amendment and Supreme Court

jurisprudence, the city of Jackson does not provide any notice to

the 207 Second LLC of the day, date, time and location of the

hearing for the city to obtain the Administrative Search Warrant

to inspect 207 Second Street.  In order for an administrative

search to be constitutional, the subject of the search, the 207

Second LLC, must be afforded an opportunity to obtain

precompliance review before a neutral decisionmaker. *NILI*

*2011, LLC et al v. City of Warren, Case No. 15-cv-13392 (E.D.*

*Mich. Oct. 23, 2018)*

48.    The City of Jackson, pursuant to the Home Rule City Act and

MCL 117.4 (Q), created an Administrative Hearing Bureau. The

creation of this Administrative Hearing Bureau allows the city of

Jackson to directly levy, collect, and retain one hundred percent

35

(100%) of revenue received from fines and costs for certain

ordinance alleged "blight" violations. **Chapter 14 Non-Owner**

**Occupied Residential Rental Property Registry alleged**

**violations are adjudicated by the City Administrative**

**Hearing Bureau.**

49.    Since the adoption of the Non-Owner-Occupied Residential

Property Registry inspection regimen in 2012 by the city of

Jackson through the fiscal year 2019-20, the Administrative

Hearing Bureau has collected Two million forty-seven thousand

and eight hundred fifty-six dollars ($2,047,856) in costs and

fines for the adjudication of Non-Owner-Occupied Residential

Property Registry violations.

50.    At a trial held in the city of Jackson Administrative Hearing

Bureau on February 10, 2021, the 232 West Mason LLC, a

Michigan limited liability company, which is not a party to this

litigation, but which the Plaintiffs have personal knowledge of

the stated facts, battled the unlawful action by the City Code

Enforcement Official, of a citation that was issued to the 232

West Mason LLC after an inspection conducted by City Code

Official Ricardo John O'Connor, for an alleged leaking roof of

the rental property located at 232 W. Mason in the city of

Jackson. Both code enforcement official Ricardo John

O'Connor, who issued the citation, and Chief Building Inspector

Brian Taylor, testified at this trial that neither of them observed

any evidence that demonstrated that the roof was leaking or was

not "reasonably weatherproof". <u>See</u> the Order of AHB Hearing

Officer John S. Kane set forth as Exhibit "V".

51.    The 232 West Mason LLC demonstrated as a matter of law, at

the trial conducted in the Administrative Hearing Bureau on

February 10, 2021, that the city did not have the statutory

authority to conduct inspections on a biannual basis, pursuant to

Chapter 14 Code, as was city practice, as the Chapter 14-42

Inspections ordinance was constitutionally void for its vagueness

as a person of ordinary intelligence could not decipher what time

frame was statutorily authorized by city ordinance as an

inspection schedule. Therefore, the citation that was issued to the

232 West Mason LLC for a roof that was "reasonably

weatherproof" should be dismissed forthwith with prejudice.

Assistant City Attorney, Mark Porterfield, represented to

Administrative Hearing Officer John Kane that a city council

resolution existed that provided the city with the statutory

authority to conduct Non-Owner Occupied Residential Rental

Property Registry inspections on a biannual inspection schedule.

52.    Administrative Hearing Officer John Kane ordered both the city

and the Respondent, the 232 West Mason LLC, to produce a "Post Trial" brief, due within thirty days, affirming their positions as to the statutory authority of the city of Jackson to lawfully conduct biannual Non-Owner Occupied Residential Rental Property Registry inspections.

53.    The city schedules rental property inspections to coincide with the statutory two-year rental registration requirement, "Because Chapter 14 of the City Code provides that non-owner-occupied residential dwellings are to be registered every two years, the city schedules the inspection cycles to match the registration time periods", Assistant City Attorney Mark Porterfield argued in his Jackson Administrative Hearing Bureau post trial brief. However, there was no existing statutory authority to align these inspections with the registration cycle making this inspection scheme an arbitrary and capricious one. See the Petitioners AHB Post-Trial Brief set forth as Exhibit "T".

54.    The Respondent, the 232 West Mason LLC, demonstrated as a matter of law that Chapter 14 Article II 14-42 (3) Non-Owner Occupied Residential Rental Property Registry inspection regimen  schedule is arbitrary, capricious and pursuant to West Bloomfield Charter Twp. v. Karchon, 209 Mich. App. 43, 530 N.W.2d 99, 1995 Mich. App., and  Northgate Towers Assocs. v.

38

<u>Royal Oak Charter Twp., 214 Mich. App. 501, 543 N.W.2d 351,</u>

<u>1995 Mich. App.,</u> Constitutionally void for its vagueness for the lack of a stated inspection schedule that an ordinary person of common intelligence could understand. Therefore, as the inspection of 232 W. Mason was conducted unlawfully, and without statutory authority, the 232 West Mason LLC demonstrated as a matter of law that the citation that the city issued to the LLC should be dismissed forthwith with prejudice. <u>See</u> the Respondents AHB Post-Trial Brief set forth as Exhibit "U".

55. **Administrative Hearing Officer John Kane, in his post-trial order addressing the brief from both the city and the 232 West Mason LLC on the Constitutionality and therefore validity of a two year inspection schedule cycle conducted by the city, Chapter 14 Article II Non Owner Occupied Residential Property inspection regimen, placed in writing in his Order that he does not have the statutory authority as an Administrative Hearing Officer to rule upon the Constitutional argument of void for vagueness presented by the Respondent, the 232 West Mason LLC. Therefore, even after ordering that a brief be prepared by both the city of Jackson and the 232 West Mason LLC on that same issue,**

**Kane then refuses to rule on the issue of the statutory authority of the city to conduct a two-year non-owner-occupied residential property inspection regimen.** <u>See</u> the Order of AHB Hearing Officer John S. Kane set forth as Exhibit "V".

56. Furthermore, Kane writes in his post-trial order on the affirmative defense to the Chapter 14 Code citation that the roof is not leaking and therefore comports with the city code that a roof be "reasonably waterproof". Therefore, the issuance of a citation for an anticipatory breach of the city code, **in this case a roof that might leak in the future,** is not lawfully within the purview of the city to sanction. However, he writes **"His [232 West Mason LLC] position is that because the roofs in question do not yet leak, they do not constitute a threat to the tenants' health, safety, or welfare that the City has authority to sanction. He is essentially relying on the adage that, "If it ain't broke, don't fix it. <u>While this is surely common sense in many contexts, the City Housing Code is not one of those contexts".</u>** It would seemingly appear that a more appropriate maxim for the City Housing Code would be **"If the City thinks its broke-Fix It-Even if it's not.". One must ask, is the Jackson City Housing Code special in that, at least in some**

**contexts, it defies all reason, and common sense?** <u>See</u> the

Order of AHB Hearing Officer John S. Kane set forth as Exhibit

"V".

57. City of Jackson Administrative Hearing Bureau Officer Kane

subsequently levies Three hundred twenty dollars ($320.00) in

costs and Two Thousand dollars ($2000.00) in fines against the

232 West Mason LLC for the anticipatory contravention of the

Chapter 14 Non-Owner-Occupied Residential Property Registry

code. <u>See</u> the Order of AHB Hearing Officer John S. Kane set

forth as Exhibit "V".

58. Those charged with enforcing the Non-Owner-Occupied

Residential Property Registry inspections may inspect the

dwellings "as necessary to enforce the provisions of this article"

for the safeguarding of the "health, safety and welfare of the

occupants of dwellings and of the general public." Sec. 14-

42(1).

59. An inspection of a property occurs when an inspector appears at

the property demanding to inspect. The inspector hands a

consent to inspect form to the owner. If the owner or occupant

denies the city entry to a property for a Chapter 14 Code

inspection, the inspector subsequently receives an administrative

search warrant for the inspection from the local magistrate.

41

Then, the owner is invoiced at the rate of $255.00 (two-hundred fifty-five dollars) for a "lock out" or for the failure to "allow access" fee to the property for each inspection that consent to inspect the property is denied.

60.   Where the owner or occupant demands a warrant for the inspection, the official "shall obtain a warrant from a court of competent jurisdiction." Sec. 14-42(5). The Article permits an *ex parte* warrantless inspection only in an "emergency situation." *Id*. Code 1977, § 8.604; Ord. No. 93-22, § 1, 10-12-93; Ord. No. 2012-03, § 1, 2-21-12. This is the only procedural safeguard or element of procedural due process offered to the citizens of Jackson under the Article, pre-deprivation or post-deprivation. The Article provides neither means for pre-compliance *bi-parte* review in front of a neutral decisionmaker as Supreme Court jurisprudence requires nor post-deprivation appeal or review. The warrant process is perfunctory, and the Article mandates that the *ex parte* warrant ***shall*** be issued on administrative application regardless of whether the application or any affidavit in support of such application meets any standards demonstrating any legitimate governmental purpose, whatsoever.

61.   On the degree of specificity required for the issuance of the

warrant, the warrant section of this Article, varies significantly

from the warrant section of the Housing Law of Michigan. Sec.

127 of Michigan Public Act 167 of 1917 provides:

(1) In a nonemergency situation where the owner or occupant demands a warrant for inspection of the premises, the enforcing agency shall obtain a warrant from a court of competent jurisdiction. The enforcing agency shall prepare the warrant, stating the address of the building to be inspected, the nature of the inspection, as defined in this or other applicable acts, and the reasons for the inspection. It shall be appropriate and sufficient to set forth the basis for inspection (e.g., complaint, area or recurrent violation basis) established in this section, in other applicable acts or in rules or regulations. The warrant shall also state that it is issued pursuant to this section, and that it is for the purposes set forth in this and other acts which require that inspection be conducted.

(2) If the court finds that the warrant is in proper form and in accord with this section, it shall be issued forthwith.

(3) In the event of an emergency no warrant shall be required.

MCL § 125.527.

61. Under Article I of the Code of Ordinances, the owner must pay

inspection fees; the failure to do so may result in the imposition

of a lien on the subject real property and subjects the owner to a

collection suit by the city. Sec. 14-43. Code 1977, § 8.605; Ord.

No. 91-14, § 1, 4-23-91; Ord. No. 92-8, § 1, 5-19-92; Ord. No.

92-17, § 1, 10-20-92; Ord. No. 93-22, § 3, 10-12-93; Ord. No.

98-23, § 1, 8-18-98; Ord. No. 2012- 03, § 1, 2-21-12. Such

collection remedies granted to the city are not subject to any

challenge or review whatsoever. The administrative search

warrant applicant "shall obtain" the warrant, and the warrant

"shall issue" upon such application.

62.  Nothing in the Non-Owner Occupied Residential Rental

Property Registry code provides any type of mechanism for

owners to challenge the inspection of their property, petition a

neutral decisionmaker, and assert any other of their rights at any

type of precompliance review before the inspection takes place.

63.  The single local magistrate of the City is charged with the

obligation of issuing *ex parte* administrative warrants, which the

Article makes mandatory. Thus, the warrants are systematically,

habitually, perfunctorily, unconditionally, and as a matter of

custom and policy, issued on some type of *ex parte* application

only on the averment of City officials, whether supported by

sworn testimony made on personal knowledge articulating a

legal basis for issuance, mere hearsay, or less. The averments in

support are routinely and automatically accepted, the

applications granted, and the *ex parte* administrative warrants

issued, all without challenge. Allegations given in support of the

application, if any, are typically conclusory and lack the

inclusion of a sworn statement of facts on personal knowledge

establishing probable cause or any good cause for such

44

inspections. Such are, thus, made with no showing or articulation of any facts establishing a valid governmental purpose, rationale, logical basis, or legal basis. Such shortcomings effectively render the warrants arbitrary and capricious at best, or motivated by evil purpose or recklessness at worst, which is not surprising given that such issuance is mandated by legislative fiat. The issuance of the warrants is done on what is essentially a "rubber stamp" basis. The warrant process cannot function constitutionally, lawfully, or even effectively by such mechanism. Unless the magistrate scrutinizes a legislative or administrative assessment of broad factors not unique to the particular property and property owners and occupants at issue, he or she must be forced to issue such a "rubber stamp" warrant, which provides no protection at all to the property owner or occupant. Further, unlike the parallel state law, the Article sets forth no standards for the determination of what the warrant, application, or affidavit must provide or for its issuance.

64. The Constitution mandates that before an administrative search warrant is issued and the inspection is conducted, the government must give the subject of the search a meaningful opportunity to contest an administrative search request by obtaining precompliance review in front of a neutral

decisionmaker before the search or inspection occurs. *NILI 2011,*

*LLC et al v. City of Warren, Case No. 15-cv-13392 (E.D. Mich.*

*Oct. 23, 2018)*

65.    To satisfy constitutional guarantees against unreasonable

searches and of notice and an opportunity to be heard, the review

scheme, at a minimum, must give the owner a meaningful

chance to contest an administrative search request in front of a

neutral party before the search occurs. Only after such a *bi-parte*

search warrant hearing process may any magistrate properly and

conclusively determine that an inspection is necessary for the

"safeguarding of the health, safety and welfare of the occupants

of dwellings and of the general public."

66.    The mechanism for the administrative search warrant inspection

process the Article authorizes lacks any provision or safeguard

of precompliance review; it allows absolutely no right of

precompliance review or *bi-parte* challenge before the search

warrant is authorized or the search occurs.

67.    Consequently, the Article is facially invalid as violative of

constitutional guarantees of the right against unreasonable

searches and seizures and of procedural due process comprised

of notice and an opportunity to be heard reasonably calculated to

inform citizens in advance so that they may enjoy the privilege

of being present for, fully prepared for, and fully informed at,

such proceeding, hearing, or administrative review.

68.  The city is liable to Plaintiffs as it has, through its Non-Owner

*Occupied* Residential Rental Property Registry code

promulgated a facially unconstitutional Article and has

conducted itself in the enforcement of such Article so as to run

afoul of these guarantees under the fourth and fifth amendments,

the right to privacy and to be secure in one's home, and the right

to due process. Further, the City has employed customs,

practices, and policies that further derogate such rights of its

citizens. All inspections of residential real property, related

charges and fees are made and collected pursuant to and solely

under the power the Article grants to the City and its officials for

administration and enforcement.

69.  On March 12, 2021, and June 18, 2021, Lydell Tanner, Code

Enforcement Officer for the city of Jackson attempted to conduct

a Non-Owner *Occupied* Residential Rental Property Registry

inspection at 1604 Floral, a vacant property. The property

manager, Loren Romain, denied the city entry to the property or

its grounds and demanded a warrant be obtained to conduct an

inspection. Code Enforcement Official Tanner Conducted a

Chapter 14 Non-Owner-Occupied Residential Property code

47

inspection from the public sidewalk on March 12, 2021. The
owner of the property was invoiced twice for a Chapter 14
inspection "lock out" fee at the rate of Two hundred Fifty-Five
dollars ($255.00) for each inspection date.

70. In an electronic mail exchange dating from March 15 to March
31 by and between Loren Romain, property manager of 1604
Floral, and Mathew Haggerty, Jackson city attorney, Romain
explains to Haggerty that as the city cannot demonstrate they
have statutory authority to conduct the inspection on a biannual
basis because the property is vacant. The property is vacant as
there are no tenants residing in the property. Therefore, under the
code, the City of Jackson cannot require that the property be
**inspected to ensure safe, secure and sanitary living
conditions for those *residing in* non-owner-occupied
residential dwelling,** pursuant to the findings and purpose of the
Non-Owner-Occupied Residential Property code. As the
property does not meet the definition of Non-Owner-Occupied
Property, there is no statutory authority for the city to conduct an
inspection. Furthermore, Romain requests of the city that if it is
the intent of the city to obtain an administrative search warrant
to inspect the premises that Romain be apprised of the day, date,
place and time of the administrative search warrant hearing. See

48

the Initial Inspection Notification Letter for 1604 Floral set forth

as Exhibit "W".

71.     After a second  request via electronic mail by Romain to be

placed on notice of the day, date, place and time of any

administrative search warrant hearing, Mathew Haggerty, in a

blatant disregard for constitutionally mandated due process and

Supreme Court jurisprudence, ignores Romain's request to be

notified of the administrative search warrant hearing so as to be

able to exercise his constitutional mandated right to contest the

issuance of an administrative search warrant obtained for the

purpose to conduct an inspection at 1604 Floral by responding to

Romain that "**You will be provided notice of any forthcoming**

**inspection conducted via administrative search warrant in**

**the same manner as all other landlords."** <u>See</u> the Email

Correspondence Between Romain and Hagerty set forth as

Exhibit "X".

72.     After eight further requests made by Loren Romain of Mathew

Haggerty, which included case law demonstrating to Hagerty

that the city of Jackson is obligated by Supreme Court

jurisprudence to provide the subject of the administrative search

an opportunity to obtain a bi-party, pre-compliance review

before a neutral decision maker, Haggerty belatedly responds to

49

Romain the city is under no obligation whatsoever to provide to

Romain the day, date, time and place of when the city will seek

and obtain an administrative search warrant. <u>See</u> the Final Notice

of Inspection Prior to Search Warrant for the 06/18/2021

Inspection set forth as Exhibit "Y", and the Municipal Billing

Invoice set forth as Exhibit "Z".

73.     On March 3 and April 1, 2021, Code Enforcement Officer

William Mills of the City of Jackson attempted to conduct a

Non-Owner *Occupied* Residential Rental Property Registry

inspection 903 West Washington. Mills was denied the entry to

the interior of the property, or its grounds and demand was made

for a warrant to be obtained to conduct an inspection. The

property owner was invoiced twice for a Chapter 14 inspection

"lock out" fee at the rate of Two hundred Fifty-Five dollars

($255.00) for each inspection date. <u>See</u> the Final Notice of

Inspection Prior to Search Warrant for the 04/01/2021 Inspection

set forth as Exhibit "AA", the Municipal Billing Invoice set forth

as Exhibit "BB", and the Unsigned Consent Form set forth as

Exhibit "CC".

74.     On July 14, 2021, Code Enforcement Officer William Mills

appeared at 903 West Washington and served an Administrative

Search Warrant, dated July 14, 2021, and signed by the local

magistrate at 8:30 a.m. the same day, to search for Chapter 14

Maintenance Code violations on both the exterior grounds and

interior of the structure upon the property manager Loren

Romain and then entered the property. No notice of an

administrative search warrant hearing, as required by Supreme

Court jurisprudence and the United States Constitution, was

received either by the owner, property manager or the tenant

living in the property, who was not present when the search

warrant was served and executed. <u>See</u> the Administrative Search

Warrant set forth as Exhibit "DD".

75.   In 1967 the Supreme Court held that administrative inspections

to detect building code violations must be undertaken pursuant

to a search warrant if there is an objection to such an inspection.

*Camara v. Municipal Court, 387 U.S 523, 530* and See v. *City of*

*Seattle, 387 U.S. 541.*

76.   Much litigation has concerned the sufficiency of the complaint

to establish probable cause to obtain a search warrant. **The court**

**has ruled and demonstrated that mere conclusory assertions**

**are not enough to obtain a search warrant.**  In *Byars v. United*

*States, 273 U.S. 28* the affiant stated he "has good reason to

believe and does believe" that the defendant has contraband

materials in his possession. In *Giordenello v. United States 357*

51

*U.S. 480, 486* the complainant merely stated his conclusion that

the defendant had committed a crime.

77.   Code Enforcement official William Mills swore in his affidavit

to obtain the administrative search warrant to conduct a Chapter

14 inspection upon 903 West Washington on both the exterior

and interior of the structure is that he observed from the public

sidewalk on 4 March 2021, the following five alleged Chapter

14 Code exterior violations, "two screens missing, upper level 2

screens, gutter and downspout not connected on east side of

porch, low hanging in center not sloped towards downspout,  and

soffit sagging and not attached in center of structure". <u>See</u> the

Administrative Search Warrant set forth as Exhibit "DD".

78.   **No alleged interior violations were cited on Code**

**Enforcement Official Mills affidavit to obtain an**

**Administrative Search Warrant.** Therefore, the warrant to

search the interior of the structure located at 903 West

Washington for Chapter 14 Code violations which was issued by

the local magistrate and obtained by the city of Jackson Code

Official Mills, was authorized merely upon the conclusory

assertion by Mills, which is unlawful, that if a violation may

exist on the exterior of a structure that there must be a violation

on the interior of the structure thereby providing probable cause

52

for the search of the interior of the structure was unlawful and contravenes the U.S. Constitution and Supreme Court jurisprudence. See the Administrative Search Warrant set forth as Exhibit "DD".

79. The Jackson Chapter 14 maintenance code provides for no statutory authority to a Code Enforcement official to cite the five alleged exterior violations Code Enforcement official William Mills cited and deployed in his effort to obtain the Administrative Search Warrant to conduct the inspection at 903 W. Washington. See the Administrative Search Warrant set forth as Exhibit "DD".

80. Chapter 14 Section 101 (5)b, cited by Mills on his search warrant affidavit as probable cause to obtain a search warrant for one alleged violation of missing screens, is unambiguously clear in that "**Every insulated window shall be provided with a screen only".** Pursuant to Chapter 14 maintenance code Section 101 (5) b, a screen for the insulated window was provided to the tenant by the owner of the structure thereby being in compliance with Chapter 14 (101) (5) b screen code. It was necessary for the tenant to remove the owner provided screens to install window air conditioning units into the window frames. The tenant placed the provided screens in storage near the windows where the air-

53

conditioning units were installed in the interior of the structure.

The second alleged screen violation pursuant to 14-101 (5) b on the search warrant affidavit states "upper level 2 screens". No reasonable person of common standard intelligence can ascertain from this vague statement of fact, "upper level 2 screens", if a Chapter 14-101 (5) b alleged violation in fact may exist. <u>See</u> the Administrative Search Warrant set forth as Exhibit "DD".

81.   Code Enforcement official Mills cited Chapter 14-72 (1) c as probable cause for two violations regarding gutters whereby it is alleged that a gutter was "low hanging in center not sloped towards downspout" and "gutter and downspout not connected on east side of porch". The cited code reference used to obtain the search warrant by Mills, Chapter 14 Chapter 14-72 (1) c, does not address the code issue of gutters and downspouts. <u>See</u> the Administrative Search Warrant set forth as Exhibit "DD".

82.   Chapter 14 72-14 (1) d does address downspouts and gutters and is unambiguously clear that "**Gutters and downspouts shall be provided so as to prevent rainwater from causing dampness in the walls or interior portion of the building and to prevent ground water from migrating to or entering into the basement walls or foundation".** The Chapter 14-72 (1) d code does not provide for a statutory angle of a slope of a gutter or as to proper

54

connectivity of a gutter to a downspout. The code is abundantly clear

that gutters and downspouts, are to direct water away from a structure

wall, foundation and the interior which is what occurred at 903 West

Washington as evidenced by the fact that no interior or exterior

violations at 903 West Washington are cited by Code Enforcement

Official Mills, who conducted the inspection, which demonstrated the

gutters and downspouts did not comply with Chapter 14-72 (1) d. See

the Administrative Search Warrant set forth as Exhibit "DD".

83.    The affiant on the affidavit for the search warrant, Code Enforcement

Official Mills, alleged that the "soffit sagging and not attached in

center of structure" referencing Chapter 14-72 (1) c as vindication for

citing the alleged violation. Chapter 14-72 (1) c promulgates that:

> **The roof system shall be free of defects of any kind including, but not limited to, deflection that is not a consequence of, or results in, an unsafe condition, the admission of moisture, damage to structural members, sheathing, flashings, roof covering, ventilation, and drainage systems.**

See the Administrative Search Warrant set forth as Exhibit "DD".

84.    Nowhere in Chapter 14 Article II Minimum Housing Standards is

"free of defects of any kind" "roof system", "deflection", or unsafe

condition" defined thereby allowing Code Enforcement Officials,

including Mills with unfettered discretion as to the determination of

their meaning.

85.    After thoroughly conducting an exterior and interior inspection of

903 West Washington Code Enforcement Officer Mills did not cite

any roof system Chapter 14-72 (1) c maintenance violations that

demonstrated that any unsafe condition, the admission of moisture,

damage to structural members, sheathing, flashings, roof covering,

ventilation, and drainage systems, had in fact occurred. <u>See</u> the

Rental Certificate Inspection Chapter 14 Violations set forth as

Exhibit "EE".

86.    The city has arbitrarily, capriciously, and unlawfully, conducted

inspections every two years, to match the registration time

period since the adoption of the Chapter 14-4 Registration and

14-42 Inspection ordinances from March 22, 2012, through July

6, 2021.

87.    On July 7, 2021, the city changed the registration cycle to every

three years.

88.    On July 7, 2021, the city enacted a revised Chapter 14-42

inspection regimen ordinance, which provided for inspections to

be conducted in conjunction with the registration period. This

change in policy reveals that the City of Jackson was aware that

their policy was arbitrary and capricious, and, therefore, not in

alignment with the rule of law.

89.    The city is liable to Plaintiffs and their classes as it has through

56

its Chapter 14 Non-Owner-Occupied Rental Property Code

Enforcement Division promulgated a facially unconstitutional

Article, which is void for its vagueness, and has enforced such

Article so as to trample the guarantees under the fourth, fifth,

and fourteenth amendments, the right to privacy and to be secure

in one's home, the freedom to utilize real property, and the right

to due process. Further, the City has systemically and

continuously deployed customs, practices, and policies that

further derogate such rights of its citizens. All inspections of

residential real property, related charges and fees are made and

collected pursuant to and solely under the power the Article

grants to the City and its officials for administration and

enforcement.

90.    The City of Jackson has performed Chapter 14 Non-Owner-

Occupied Residential property inspections of unoccupied, vacant

residential property without statutory authority to do so. Chapter

14 Section 14-2 provides for that **non-owner-occupied**

residential property be "**inspected to ensure safe, secure and**

**sanitary living conditions for those *residing in* non-owner-**

**occupied residential dwellings or units.**" Nowhere does the

Chapter 14 Articles I and II ordinance mention an inspection

regimen for unoccupied vacant properties. The Chapter 14

Article I ordinance is titled **"Non-Owner-Occupied Residential**

**Property Registry.**

91. Consequently, the Chapter 14 Housing Ordinance is facially

invalid as it violates the right to be free from unreasonable

searches and seizures, and of procedural due process which

requires notice. For notice to be meaningful it must be calculated

to apprise citizens of their interests so that they can prepare for

legal proceedings.

92. 903 West Washington LLC, 207 Second LLC, 321 West Mason

LLC, Plaintiffs, along with thousands of other homeowners, are

faced with the dubious position that with every inspection

performed by the City of Jackson they are forced to upgrade

their properties for items that clearly fall outside of the Chapter

14 requirements such as:

Replacing roofs with years of life left that meet the Chapter 14

requirements because they don't "look good";

Replacing carpeting because it doesn't "look good";

Repairing, replacing, or upgrading other property elements that

aren't required by the Chapter 14 code, or any other existing

code, simply because the City wants the property to "look

better".

93. It is the policy and custom of the City to illegally enforce the

Chapter 14 Code in order to deprive owners of rental properties

in the City of their constitutional right to due process and

freedom from an unlawful search in an effort to drive revenue

growth through unlawful inspections, property registration fees

collected pursuant to unlawful registration ordinance for both

occupied and vacant property being enforced, tickets illegally

issued and fines extracted in violation of Plaintiffs'

constitutional rights as set forth herein.

94. It is the policy and custom of the City to illegally enforce the

Chapter 14 Code in order to force Plaintiffs, and those similarly

situated, to incur hundreds if not thousands of dollars in

additional expenses with every property registration and

inspection the city engages in.

## IV. WHAT HAPPENED TO PLAINTIFFS HAPPENS TO EVERY OTHER HOMEOWNERS WHO OWN RENTAL PROPERTY IN THE CITY

95. Plaintiff incorporates the preceding paragraphs.

96. The plight of Plaintiffs illustrates the dangers of the system set

forth by local ordinances as implemented and administered by

the city and its inspectors and building officials.

## V. CAUSES OF ACTION

## COUNT ONE

## VIOLATION OF DUE PROCESS

### *(Facial Challenge: Void for Vagueness)*

### *FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

97.   Plaintiffs incorporate the preceding paragraphs.

98.   The 14th Amendment to the U.S. Constitution bars the enforcement of ordinances which either forbid or require the doing of an act in terms so vague that those of common intelligence must guess at their meaning.

99.   Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

100.   Jackson City Code Chapter 14-42 (1) addresses the inspection regimen for Non-Owner-Occupied Residential Property. It states:

> In order that they may perform their duties to safeguard the health, safety and welfare of the *occupants* of dwellings and of the general public, the chief building official, chief of police and fire official **are hereby authorized to make**

**or cause to be made such inspections of dwellings or dwelling units as are necessary to enforce the provisions of this article.** The inspections that are authorized for the purpose of enforcement of the provisions of this article shall be made at a reasonable time. The word "dwelling" as used in this paragraph shall include, but not be limited to, those categories of structures defined in section 14-26.

101. Jackson City Code inspection regimen Chapter 14-42 (3) further explicates that "**An inspection shall be conducted in the manner best calculated to secure compliance with this article and appropriate to the needs of the community**."

102. Nowhere within Chapter 14 of the Jackson City Code are the phrases "as are necessary" or "in the manner best calculated" defined.

103. The cited provisions of the Jackson City Chapter 14 Code do not provide clearly enumerated standards or definitions sufficient to allow a person of ordinary intelligence to understand when Chapter 14 Non-Owner-Occupied Residential Property inspections are allowed to be conducted by the city or what is required. As such, the provisions grant unbridled discretion to Code Officials resulting in the arbitrary and selective enforcement of the inspection regimen.

104. "A statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which

leaves the definition of its terms to law enforcement officers."

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999) (applying same standards to ordinance). A licensing scheme must have a "narrow, objective, and definite standards to guide the licensing authority" so as not to provide undue discretion to law enforcement. *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 609.

105. Accordingly, the cited ordinance is, on its face, unconstitutionally vague and unenforceable and their application to these Plaintiffs therefore resulted in violations of their due process.

106. Since the adoption and promulgation of an arbitrary, capricious and Constitutionally void for its vagueness Chapter 14 Article II 14-42 Inspection Regimen ordinance enacted by the city from March 22, 2012 through July 6, 2021, when the city changed the Chapter 14-42 Inspection ordinance, the city of Jackson has illegally collected in Chapter 14 inspection fees through the city fiscal year 2019/20 of Three million nine hundred eighty four thousand six hundred forty seven dollars ($3,984,647.00). The City of Jackson budgeted amount of collected Chapter 14-

Section 42 Non-Owner-Occupied Residential inspection fees for 2020/21 fiscal year, which ended June 30, 2021, and which is not available for public viewing as of the date of this complaint, anticipated an additional Seven hundred thousand dollars collected ($700,000.00) revenue from these arbitrary, capricious and constitutionally void for its vagueness inspection schedule.

107. Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

108. In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The ordinance on its face violates

63

constitutional guarantees of the right to procedural due process.

## COUNT TWO

### VIOLATION OF DUE PROCESS

*(Facial Challenge: Void for Vagueness)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

109. Plaintiffs incorporate the preceding paragraphs.

110. The 14th Amendment to the U.S. Constitution bars the enforcement of ordinances which either forbid or require the doing of an act in terms so vague that those of common intelligence must guess at their meaning.

111. Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

112. **Jackson city code Chapter 14-13 addresses what the city "presumes"** what is a Non-Owner-Occupied Residential Property and therefore subject to a Chapter 14 registration and subsequent Chapter 14-42 Inspection Regimen. Article I Sec. 14-13. Presumption of non-owner occupied residential dwelling

64

or unit promulgates "**Whenever a residential dwelling or unit**

**used for or intended for residential purposes is vacant or**

**occupied by anyone other than the owner of record as shown**

**in the records of the city assessor, there shall exist a**

**presumption that the dwelling or a portion of the dwelling is**

**a non-owner occupied residential dwelling or unit regardless**

**of whether monetary compensation is exchanged between the**

**owner and the person(s) occupying the residential dwelling**

**or unit."**

113.  Nowhere within Chapter 14 Article I or Article II of the Jackson

City Code is the phrase "vacant" defined.

114.  The cited provision of the Jackson City code, Chapter 14-13,

does not provide a clear enumerated standard or definition of

"vacant" sufficient to allow a person of ordinary, common

intelligence to understand when a residential structure within the

city of Jackson must comport with the requirement Chapter 14

Non-Owner Occupied Residential Property registration and

inspection requirements As such, the provision grants unbridled

discretion to Code Officials resulting in the arbitrary and

selective enforcement of what is to be presumed as a Non-

Owner Occupied Residential property and therefore subject to

Chapter 14 jurisdiction.

65

115.  Chapter 14 Article I Non-Owner-Occupied Property Registry

Section 14-13 Presumption of Non-Owner-Occupied Property

presumes that a property is a non-owner-occupied residential

property whenever it is "vacant" or when the owner of record is

not in residence, without providing, in Chapter Article I of the

Non-Owner-Occupied Residential Property Registry, a definition

of "vacant". Is an owner-occupied structure considered vacant

and therefore non-owner occupied by the City of Jackson should

the owner of record depart the residence temporarily?  Is owner

occupied real property in the city of Jackson subject to a Chapter

14 Non-Owner-Occupied Residential property registration

requirement and subsequent inspection if the owner of record

should decide to hold title in their name only and then depart

their abode temporarily while their spouse still resides in the

property who is not an "owner of record"? Is an owner of record

required to register and submit to a city inspection regimen for

engaging in an occupation that may require absences of varying

and undetermined lengths of time from their owner-occupied

real property? Any reasonable person of standard common

intelligence is undeniably unable to decipher from such cryptic

vague, arbitrary, and capricious wording in Article I Chapter 14-

13 that states "Whenever a residential dwelling or unit used for

66

or intended for residential purposes is vacant…., there shall exist

a presumption that the dwelling or a portion of the dwelling is a

non-owner occupied residential dwelling or unit" of whether in

the previous three examples provided if an owner occupied

structure is considered vacant and subject to the requirement of

registering the structure as Non Owner Occupied, pursuant to

14-4. Based on that ambiguous language should the property

owner then subsequently endure an invasion of privacy that is

required with the Chapter 14 Section 42 Non-Owner-Occupied

inspection regimen without the city providing a definition in

Chapter 14 Article I of the meaning of the term "vacant".

116. "A statute is unconstitutionally vague if it denies fair notice

of the standard of conduct for which the citizen is to be held

accountable, or if it is an unrestricted delegation of power which

leaves the definition of its terms to law enforcement officers."

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,

418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer*

*Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir.

1999) (applying same standards to ordinance). A licensing

scheme must have a "narrow, objective, and definite standards to

guide the licensing authority" so as not to provide undue

discretion to law enforcement. *American-Arab Anti-*

67

*Discrimination Comm.*, 418 F.3d at 609.

117.   Accordingly, the cited ordinance, Chapter 14-13, is on its face, constitutionally void for its vagueness, application to these Plaintiffs, and others like them, therefore resulted in violations of their due process.

118.   Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

119.   In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The ordinance on its face violates

68

constitutional guarantees of the right to procedural due process.

## COUNT THREE

## VIOLATION OF DUE PROCESS

### *(Facial Challenge: Void for Vagueness)*

### *FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

120. Plaintiffs incorporate the preceding paragraphs.

121. The 14th Amendment to the U.S. Constitution bars the enforcement of ordinances which either forbid or require the doing of an act in terms so vague that those of standard common intelligence must guess at their meaning.

122. Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

123. Jackson City Code 14-72 establishes the standard for roofing. It states, "*Structure.* Every foundation, wall and roof **shall be reasonably weatherproof, waterproof** and rodent-proof, shall be capable of privacy and **kept in good repair** and "**the roof system shall be free of defects**".

69

124. Nowhere in the **Chapter 14 Code** are "reasonably weatherproof, waterproof, in good repair, and defect" defined.

125. **The cited provision of the Jackson City Chapter 14 Code does not provide clearly enumerated standards or definitions sufficient to allow a person of ordinary intelligence to understand when a roof is "reasonably weatherproof, waterproof" or is "in good repair" or has a "defect" that would affect its functionality. As such, the provisions grant unbridled discretion to Code Officials resulting in the arbitrary and selective enforcement of the provision and at worst provide an avenue to a Code Enforcement Official to engage in a deliberate nefarious intent to cite and ticket an inconsequential  Chapter 14-72 "defect", which neither impairs the function or utility of a roof, thereby compelling the homeowner to endure an unnecessary expense to repair or replace a roof because the inspector "does not like the way a roof looks".**

126. On December 13, 2018, the structure located at 321 West Mason was razed by the city of Jackson as a direct result of arbitrary, and unlawful application by city Chief Building Official Brian Taylor of an arbitrary, capricious and

constitutionally void for its vagueness Chapter 14-72 Jackson

City roofing Code.

127.  On April 20, 2021, Administrative Hearing Bureau Officer

John Kane in his written order levied a fine of Two Thousand

Dollars ($2000.00) upon the Respondent, the 232 West Mason

LLC, for a contravention of Chapter 14-72 with an additional

Three hundred Twenty Dollars ($320.00) in costs.

128.  This enforcement action by John Kane was predicated upon

testimony by Chief Building Inspector Brian Taylor who

testified at the Administrative Hearing Bureau trial on February

10, 2021, that the current condition of the shingles did not

allow them "to perform their function". **Taylor further**

**testified that the current condition of the roof violated**

**Section 14-72 that required that the roof be "reasonably**

**weatherproof and waterproof", <u>even though he did not</u>**

**<u>know of any leakage occurring.</u> When Taylor was**

**questioned in cross examination if the current condition of**

**the roof could nonetheless repel water-Taylor confirmed**

**that it could.**

129.  **<u>Testimony elicited from Chapter 14 Code Enforcement</u>**

**<u>Official John Ricardo O'Connor on the current condition of</u>**

**<u>the roof is that it had the "potential" to allow water to enter</u>**

**the structures located at 232 W. Mason. O'Connor further**

**testified that he had not seen any signs of leakage in the**

**interior of the home nor had the tenants complained to the**

**city about any water leaks attributable to the current**

**condition of the roof.**

130. Administrative Hearing Bureau Officer, John Kane, who

adjudicates Chapter 14 code violations for the city of Jackson,

provides an adequate synopsis of the Chapter 14 Article II

"Minimum Housing Standards" Sections 14-25 through 14-111

for all Non-Owner-Occupied Residential Property owners it

affects within the city of Jackson with his written statement in

his Post Trial Order- "**If it ain't broke, don't fix it. While this**

**is surely common sense in many contexts, the City Housing**

**Code is not one of those contexts".** Quoting Kane from his

post trial order in the matter of city of Jackson v. 232 West

Mason LLC, dated April 20, 2021.

131. Since the adoption and promulgation of an arbitrary, capricious

and constitutionally void for its vagueness Chapter 14-72

ordinance on February 23, 2012, through today's date, the city of

Jackson has unlawfully razed structures, levied fines, and forced

the unnecessary absorption of costs for the repair and/or

replacement of roofs upon many Non-Owner Occupied and

Unoccupied Residential Property owners within the city of

Jackson.

132. "A statute is unconstitutionally vague if it denies fair notice of

the standard of conduct for which the citizen is to be held

accountable, or if it is an unrestricted delegation of power which

leaves the definition of its terms to law enforcement officers."

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,

418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer*

*Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir.

1999) (applying same standards to ordinance). A licensing

scheme must have a "narrow, objective, and definite standards to

guide the licensing authority" so as not to provide undue

discretion to law enforcement.  *American-Arab Anti-*

*Discrimination Comm.*, 418 F.3d at 609.

133. Accordingly, the cited ordinance is, on its face, constitutionally

void for its vagueness and its application to these Plaintiffs and

others like them resulted in violations of their due process.

134. Pursuant to 42 USC § 1983, "**Every person who, under color**

**of any statute, ordinance, regulation, custom, or usage, of**

**any State or Territory or the District of Columbia, subjects,**

**or causes to be subjected, any citizen of the United States or**

**other person within the jurisdiction thereof to the**

73

**deprivation of any rights, privileges, or immunities secured**

**by the Constitution and laws, shall be liable to the party**

**injured in an action at law, suit in equity, or other proper**

**proceeding for redress, except that in any action brought**

**against a judicial officer for an act or omission taken in such**

**officer's judicial capacity, injunctive relief shall not be**

**granted unless a declaratory decree was violated or**

**declaratory relief was unavailable."**

135.  In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The ordinance on its face violates constitutional guarantees of the right to procedural due process.

## COUNT FOUR

### VIOLATION OF DUE PROCESS

*(Facial Challenge: Void for Vagueness)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

136.  Plaintiffs incorporate the preceding paragraphs.

137.  The 14th Amendment to the U.S. Constitution bars the

enforcement of ordinances which either forbid or require the doing of an act in terms so vague that those of common intelligence must guess at their meaning.

138. Ordinances are required to provide sufficient notice of their proscriptions and requirements and to contain reasonably clear guidelines to prevent official arbitrariness or discrimination in their enforcement.

139. The city of Jackson has adopted an ordinance for foreclosed, vacant and abandoned real property, which is titled, **Chapter 14 Article VI "Foreclosed, Vacant and Abandoned Property Registry Ordinance"**, Chapter 14 Code of Ordinances of the City of Jackson, Michigan, Article VI, Sections 14-400 et seq. ("Article" or "Ordinance".)

(Ord. No. 2012-4, § 1, 3-7-12; Ord. No. 2021-03, § 2, 6-8-21)

140. The cost of the mandated registration for a Foreclosed, Vacant, and Abandoned Property to the registrant is three hundred dollars ($300.00) and is valid for a two-year period.

141. The city of Jackson, mandates by ordinance Chapter 14-403, as a condition precedent of registering a Foreclosed, Vacant or Abandoned Property, pursuant to Chapter Section 403, that the registrant must agree to provide to the city the following information, **"Any additional information required by the**

**department of community development."**

142.   Nowhere within Article VI, Chapter 14-400 of the Jackson City

Code Foreclosed, Vacant or Abandoned Property Registry

Ordinance is the phrase **"any additional information"** defined.

143.   The cited provision of the Jackson City Article VI, Chapter 14-

403 Code does not provide clearly enumerated standards or

definitions sufficient to allow a person of ordinary intelligence to

understand what the phrase "any additional information"

pertains to so as to comply with the ordinance. This clause

allows for the unfettered, arbitrary and capricious collection of

any information from a registrant that a code enforcement

official may deem necessary.

144.   "A statute is unconstitutionally vague if it denies fair notice of

the standard of conduct for which the citizen is to be held

accountable, or if it is an unrestricted delegation of power which

leaves the definition of its terms to law enforcement officers."

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,

418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer*

*Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir.

1999) (applying same standards to ordinance). A licensing

scheme must have a "narrow, objective, and definite standards to

guide the licensing authority" so as not to provide undue

discretion to law enforcement.  *American-Arab Anti-*

*Discrimination Comm.*, 418 F.3d at 609.

145.    Accordingly, the cited ordinance is, on its face, is

unconstitutionally vague and unenforceable and their application

to these Plaintiffs therefore resulted in violations of their due

process.

146.    Since the adoption and promulgation of an arbitrary, capricious

and constitutionally void for its vagueness Article VI, Chapter

14 Section 403 Code, Foreclosed, Vacant or Abandoned

Property Registry Ordinance, on March 22, 2012, the city has

collected in Foreclosed, Vacant or Abandoned Property Registry

registration fees the amount of Three hundred forty-five

thousand two hundred nineteen dollars ($345,219.00) through

June 30, 2020. Furthermore, the city of Jackson budgeted an

amount for collected Chapter 14 Foreclosed, Vacant or

Abandoned Property Registry Ordinance registration fees for

2020/21 fiscal year, which ended June 30, 2021, and which is

not available for public viewing as of the date of this complaint,

an anticipated additional Forty thousand dollars ($40,000.00) in

registration revenue collected from this arbitrary, capricious and

constitutionally void for its vagueness registration ordinance.

147.    Pursuant to 42 USC § 1983, "**Every person who, under color**

**of any statute, ordinance, regulation, custom, or usage, of**

**any State or Territory or the District of Columbia, subjects,**

**or causes to be subjected, any citizen of the United States or**

**other person within the jurisdiction thereof to the**

**deprivation of any rights, privileges, or immunities secured**

**by the Constitution and laws, shall be liable to the party**

**injured in an action at law, suit in equity, or other proper**

**proceeding for redress, except that in any action brought**

**against a judicial officer for an act or omission taken in such**

**officer's judicial capacity, injunctive relief shall not be**

**granted unless a declaratory decree was violated or**

**declaratory relief was unavailable."**

148.  In addition to the right to recover damages from the City and the

individual Defendants under Section 1983, Plaintiffs are also

entitled to the declaratory and injunctive relief from Defendants

prayed for below. The ordinance on its face violates

constitutional guarantees of the right to procedural due process.

## COUNT FIVE

### VIOLATION DUE PROCESS

*(Facial Challenge: Warrantless Searches)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTH AMENDMENT*

*AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR*

*REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF*

*INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

149.  Plaintiffs incorporate the preceding paragraphs.

150.  The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

151.  The city of Jackson has adopted an ordinance for foreclosed, vacant and abandoned real property, which is titled, **Chapter 14 Article VI "Foreclosed, Vacant and Abandoned Property Registry Ordinance"**, Chapter 14 Code of Ordinances of the City of Jackson, Michigan, Article VI, Sections 14-400 et seq. ("Article" or "Ordinance".)

(Ord. No. 2012-4, § 1, 3-7-12; Ord. No. 2021-03, § 2, 6-8-21)

152.  As adopted by the City, Chapter 14 Section 14-403 of the Chapter 14 Article VI "Foreclosed, Vacant and Abandoned Property Registry Ordinance" requires that the owner of a foreclosed, vacant or abandoned property register the property with the city.

153.  Failure of the property owner to register their foreclosed, vacant, or abandoned property with the city subjects the owner to fines

and penalties pursuant to Jackson city ordinance 14-419.

154.    The City of Jackson **has NOT adopted an ordinance for a**

**mandatory inspection schedule** for the interior or exterior of a

property registered pursuant to the **Chapter 14 Article VI**

**"Foreclosed, Vacant and Abandoned Property Registry**

**Ordinance"**.

155.    Chapter 14-403, titled "property registration required",

statutorily mandates that the registrant cede their Fourth

Amendment rights and provide the city with, as a condition

precedent to register their property, **"A statement allowing**

**authorized staff of the city to enter the premises for purposes**

**of inspection".**

156.    The Supreme Court has held that "an overarching principle,

known as the unconstitutional conditions doctrine, that

vindicates the Constitution's enumerated rights by

preventing the government from coercing people into

giving them up." *Koontz v. St. Johns River Water*

*Management Dist.,* 133 S.Ct. 2586, at 2594 (2013)

157.    This egregious, unconstitutional promulgation by the City of

Jackson that a registrant of a foreclosed, vacant or abandoned

property is statutorily mandated to provide city Code Officials

with unfettered access to their registered foreclosed, vacant or

abandoned property, cannot comport with the rule of law.

158. The adoption of Chapter 14-403 constitutes the City's express policy and practice of entering residential properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, Chapter 14-403 is patently unconstitutional and should be struck in its entirety.

159. Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**"

160. In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants

prayed for below. The ordinance on its face violates

constitutional guarantees of the right to be free from

unreasonable searches by the government.

## COUNT SIX

## VIOLATION OF DUE PROCESS

*(Facial Challenge: Void for Vagueness)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH*

*AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF*

*JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY*

*OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

161.   Plaintiffs incorporate the preceding paragraphs.

162.   The 14th Amendment to the U.S. Constitution bars the

enforcement of ordinances which either forbid or require the

doing of an act in terms so vague that those of common

intelligence must guess at their meaning.

163.   Ordinances are required to provide sufficient notice of their

proscriptions and requirements and to contain reasonably clear

guidelines to prevent official arbitrariness or discrimination in

their enforcement.

164.   The city of Jackson has adopted an ordinance for unoccupied,

vacant and abandoned real property, which is titled, **Chapter 14**

**Article VI "Foreclosed, Vacant and Abandoned Property**

Registry Ordinance", Chapter 14 Code of Ordinances of the

City of Jackson, Michigan, Article VI, Sections 14-400 et seq.

("Article" or "Ordinance".)

(Ord. No. 2012-4, § 1, 3-7-12; Ord. No. 2021-03, § 2, 6-8-21)

165. The city of Jackson **has NOT adopted an ordinance for a**

**mandatory inspection schedule** for the interior or exterior of a

property registered pursuant to the **Chapter 14 Article VI**

**"Foreclosed, Vacant and Abandoned Property Registry**

**Ordinance"**.

166. The city of Jackson, mandates by ordinance, Chapter 14-403, the

registering of a Foreclosed, Vacant or Abandoned Property.

Pursuant to Chapter 14 Section 409 Monitoring, **Periodic**

**"monitoring", not less than once every thirty (30) days, shall**

**be conducted by the chief building official or his or her**

**authorized representatives to assure continuing compliance**

**with the duties set forth in this article".**

167. Nowhere within Chapter 14 Article VI, Foreclosed, Vacant or

Abandoned Property Registry Ordinance is the phrase

**"monitoring"** defined.

168. The cited provision of the Jackson Chapter 14 Article VI Code

does not provide clearly enumerated standards or definitions

sufficient to allow a homeowner of standard, ordinary

intelligence to comprehend and understand what the phrase

"**monitoring**" is defined as, and consequently, of what city

service, if any, they are being invoiced for which is cryptically

referred to as **"monitoring"**, within city code,  as there is no

statutorily mandated Chapter 14 Article VI mandated interior or

exterior inspections of Foreclosed, Vacant or Abandoned

Property, as defined in Chapter 14 Article VI.

169.   The Registrant of the property is assessed quarterly for

"monitoring" fees at the rate of two hundred twenty-five dollars

($225.00) for one unit, three hundred dollars ($300.00) for a

two-unit property, three hundred seventy-five dollars ($375.00)

for three- and four-unit properties, and three hundred seventy-

five dollars ($375.00), plus an additional fifteen dollars ($15.00)

per unit, for properties with greater than four units. The

"monitoring" fees are assessed and collected for structures that

are being arbitrarily and capriciously allegedly "monitored",

whatever that may mean, at the discretion of the Code

Enforcement Official.

170.   "A statute is unconstitutionally vague if it denies fair notice of

the standard of conduct for which the citizen is to be held

accountable, or if it is an unrestricted delegation of power which

leaves the definition of its terms to law enforcement officers."

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,

418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer*

*Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir.

1999) (applying same standards to ordinance). A licensing

scheme must have a "narrow, objective, and definite standards to

guide the licensing authority" so as not to provide undue

discretion to law enforcement. *American-Arab Anti-*

*Discrimination Comm.*, 418 F.3d at 609.

171.   Accordingly, the cited ordinance is, on its face, is

unconstitutionally vague and unenforceable and their application

to these Plaintiffs therefore resulted in violations of their due

process.

172.   Since the adoption and promulgation of an arbitrary, capricious

and constitutionally void for its vagueness Article VI, Chapter

14 Section 403 Code, Foreclosed, Vacant or Abandoned

Property Registry Ordinance, on February 23, 2012, the city has

collected in Foreclosed, Vacant or Abandoned Property Registry

registration fees the amount of Six hundred forty-five thousand

nine hundred thirty-five dollars ($645,935.00) through June 30,

2020. Furthermore, the city of Jackson budgeted an amount for

collected Chapter 14 Foreclosed, Vacant or Abandoned Property

Registry Ordinance registration fees for 2020/21 fiscal year,

which ended June 30, 2021, and which is not available for public

viewing as of the date of this complaint, an anticipated

additional one hundred thirty thousand dollars ($130,000.00) in

registration revenue from this arbitrary, capricious and

constitutionally void its vagueness registration ordinance.

173.  Pursuant to 42 USC § 1983, "**Every person who, under color
of any statute, ordinance, regulation, custom, or usage, of
any State or Territory or the District of Columbia, subjects,
or causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured
by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper
proceeding for redress, except that in any action brought
against a judicial officer for an act or omission taken in such
officer's judicial capacity, injunctive relief shall not be
granted unless a declaratory decree was violated or
declaratory relief was unavailable.**"

174.  In addition to the right to recover damages from the City and the

individual Defendants under Section 1983, Plaintiffs are also

entitled to the declaratory and injunctive relief from Defendants

prayed for below. The ordinance on its face violates

86

constitutional guarantees of the right to procedural due process.

## COUNT SEVEN

### VIOLATION OF DUE PROCESS

*(Failure to provide proper notice and a meaningful opportunity to be heard)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH*

*AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF*

*JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY*

*OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

175.   Plaintiff incorporates the preceding paragraphs.

176.   It is unconstitutional to deprive of a person of their property without Due process of law. U.S. Constitution 14th Amendment; Michigan Constitution 1963 Article 1, Section 17.

177.   The United States and Michigan Constitutions require that a person have a meaningful opportunity to be heard as part of their due process rights.

178.   Pursuant to Chapter 14-4 a property registration is required for homeowners on Non-Owner-Occupied Property.

179.   Failure to register a Non-Owner-Occupied Property subjects the homeowner to fees and penalties pursuant to Chapter 14-17.

180.   The city has adopted an ordinance, 14-7 Issuance of a Property Registration.

181.   A property registration shall issue subject to the following terms

and conditions:

1) An application form is properly submitted;

2) An acknowledgment of local responsible agent form is submitted and signed by the local responsible agent, if required;

3) All application fees are paid;

4) All outstanding inspection fees and late fees are paid;

5) **Payment in full of all of the following fines, fees and debts relating to the property being registered owed to the city that are currently due or past due, including but not limited to:**

   a. Outstanding water or sewer bills;

   b. All charges for mowing, cleanup, weed or debris removal; and

   c. **Any fees, penalties, or debts of any sort arising from provisions of the housing code, including any blight violations.**

182. Nowhere in the Jackson city Chapter 14 Code is a process codified to provide the homeowner with the Constitutional due process required to appeal "any fees" imposed by city officials of Chapter 14 Housing Code.

183. When a homeowner objects to "any fees" assessed by Code

Enforcement Officials from the Chapter 14 Housing Code the

only "due process" afforded to them by city Code Enforcement

Officials for redress is to "talk with Brian Taylor", the Chief

Building Official in the city of Jackson

184. Allowing Brian Taylor, Chief Building Official, to be the

ultimate arbiter of any Chapter 14 "any fees" assessed by the

city of Jackson, cannot equate to an application of due process as

Constitutionally mandated and does not comport with the rule of

law.

185. It is the policy and custom of the City to illegally enforce the

Chapter 14-4 and 14-7 sections in order to deprive owners of

rental properties in the City of their constitutional right to due

process in an effort to drive revenue growth through illegally

assessed fees extracted in violation of Plaintiffs' constitutional

rights as set forth herein.

186. The City's failures as set forth in this Complaint are violations of

Plaintiffs', and those similarly situated' s, constitutional due

process rights.

187. Pursuant to 42 USC § 1983, "**Every person who, under color**

**of any statute, ordinance, regulation, custom, or usage, of**

**any State or Territory or the District of Columbia, subjects,**

**or causes to be subjected, any citizen of the United States or**

89

**other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."**

188. The due process rights of Plaintiffs and others similarly situated have been violated by the City and as a result Plaintiffs have incurred monetary and other damages. Left unchecked, the City and its agents and contractors will continue to administer the Chapter 14-7 code in violation of the due process rights of Plaintiffs and other homeowners who are similarly situated.

189. In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The application of the ordinance by Code Enforcement Officials to homeowner's who demand the City obtain a search warrant to conduct an inspection violates constitutional guarantees of the right to procedural due process.

## COUNT EIGHT

### VIOLATION OF DUE PROCESS

*(Failure to provide proper notice and a meaningful opportunity to be heard)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

190. Plaintiff incorporates the preceding paragraphs.

191. It is unconstitutional to deprive of a person of their property without Due process of law. U.S. Constitution 14th Amendment; Michigan Constitution 1963 Article 1, Section 17.

192. The United States and Michigan Constitutions require that a person have a meaningful opportunity to be heard as part of their due process rights.

193. The city has adopted an Issuance of certificate of compliance ordinance, 14-42.1., which mandates that Code Enforcement Officials **"Upon a finding that there is not a condition that would constitute a violation of this article, the certificate of compliance shall be issued."**

**Sec. 14-42.1. Issuance of certificate of compliance.**

The certificate of compliance shall be issued only upon an inspection of the premises by the chief building official or his or her appointed designee.

(1)   The chief building official shall not issue a certificate of compliance when any existing condition constitutes a violation of this article.

(2)   **Upon a finding that there is not a condition that would constitute a violation of this article, the certificate of compliance <u>shall be issued</u>**. Upon a finding that there is a condition that would constitute a violation of this article, the certificate of compliance shall not be issued, and an order to comply with this article shall be issued immediately and served upon the owner in accordance with section 14-45. **Upon re-inspection and proof of compliance, the order shall be rescinded, and a certificate of compliance <u>shall be issued</u>**. Unless stated otherwise, a certificate shall not be valid for a period of more than three (3) years from the date of the last initial inspection of the premises.

(3)   A certificate of compliance shall be issued on condition that the building or structure remains free from violations of this article. If upon re-inspection pursuant to section 14-42 of this article the chief building official determines that conditions exist which constitute a violation of this article, the certificate shall be immediately suspended as to affected areas, and an order to comply with this article shall be issued immediately and served upon the owner in accordance with section 14-45 of this article. On re-inspection and proof of compliance, the order shall be rescinded, and the suspended certificate reinstated, or a new certificate issued.

(Ord. No. 93-22, § 2, 10-12-93; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2014-8, § 2, 3-25-14; Ord. No. 2015-5, § 2, 2-10-15, eff. 3-12-15; Ord. No. 2016-14, § 2, 7-12-16; Ord. No. 2021-02, § 2, 6-8-21)

194.   On May 9, 2022, a representative of the 903 Washington LLC,

spoke by telephone at 11:24 a.m. with the city of Jackson

employee, Rhonda Watkins, who is an administrative assistant

within the city department which regulates Non-Owner-

Occupied Residential Property. The representative requested that

Watkins to electronically mail a copy of the certificate of

compliance for 903 West Washington. Much to the dismay of

the homeowner, Watkins responded that the city will not even

issue a certificate of compliance to a homeowner who has

complied with Chapter 14-42.1. who has not paid any "fees" that

may be owed to the city for the property in question. Watkins

further communicated that the balance due to the city from the

903 West Washington LLC was Twelve hundred eleven dollars

and twenty-five cents ($1211.25). This amount included,

penalties of Five hundred ten dollars ($510.00) for demanding

the city obtain a search warrant to inspect the property and three

hundred eighty-two dollars ($382.00) in search warrant fees for

which the homeowner did not receive notice of the day, date,

time and location of the search warrant application in able to be

afforded to have the opportunity to be heard in front of an

impartial decision maker as mandated by the Constitution and

Supreme Court jurisprudence.

195.   **When requested to cite where in the Chapter 14 code does it**

**provide the city statutory authority to delay the issuance of a**

**Certificate of Compliance even after Chapter 14-42.1. has**

**been complied with when there is an alleged balance for fees**

**owed to the city, Watkins replied, "It *probably* does, but I am**

**not sure or aware of what section that is in".**

196.   Nowhere in the Jackson Chapter 14 city code does it provide the

city with statutory authority to deny or delay the issuance of a

Certificate of Compliance once the condition precedent is

fulfilled of the homeowner correcting any alleged Chapter 14

violations cited by the inspector.

197.   Nowhere in the Jackson city Chapter 14 Code is a process

codified to provide the homeowner with the Constitutional due

process required to challenge an assessment imposed by city

officials of Chapter 14 fees.

198.   When a homeowner objects to Chapter 14 fees assessed by Code

Enforcement Officials the only "due process" that is afforded to

them by city Code Enforcement Officials for redress is to "talk

with Brian Taylor", the Chief Building Official in the city of

Jackson

199.   Allowing Brian Taylor, the Chief Building Official, to be the

ultimate arbiter of any Chapter 14 fees assessed by the city of

Jackson, cannot equate to an application of due process as

Constitutionally mandated and does not comport with the rule of law.

200. City of Jackson Code Enforcement Officials habitually contravene Chapter 14-42.1. by their deliberate action of failing to issue a statutorily mandated Certificate of Compliance upon completion of any Chapter 14 alleged code violations cited in an inspection by a Jackson Code Enforcement Official.

201. It is the policy and custom of the City to illegally enforce the Chapter 14 in order to deprive owners of rental properties in the City of their constitutional right to due process in an effort to drive revenue growth through illegally assessed fees extracted in violation of Plaintiffs' constitutional rights as set forth herein.

202. The City's failures as set forth in this Complaint are violations of Plaintiffs', and those similarly situated' s, constitutional due process rights.

203. Pursuant to 42 USC § 1983, "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party**

95

**injured in an action at law, suit in equity, or other proper**

**proceeding for redress, except that in any action brought**

**against a judicial officer for an act or omission taken in such**

**officer's judicial capacity, injunctive relief shall not be**

**granted unless a declaratory decree was violated or**

**declaratory relief was unavailable."**

204.   The due process rights of Plaintiffs and others similarly situated

have been violated by the City and as a result Plaintiffs have

incurred monetary and other damages. Left unchecked, the city

and its agents and contractors will continue to administer the

Chapter 14-42.1. code in violation of the due process rights of

Plaintiffs and other homeowners who are similarly situated.

205.   In addition to the right to recover damages from the City and the

individual Defendants under Section 1983, Plaintiffs are also

entitled to the declaratory and injunctive relief from Defendants

prayed for below. The application of the ordinance by Code

Enforcement Officials to homeowner's who demand the City

obtain a search warrant to conduct an inspection violates

constitutional guarantees of the right to procedural due process.

## COUNT NINE

### VIOLATION OF DUE PROCESS

*(Failure to provide proper notice and a meaningful opportunity to be heard)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH*

*AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF*

*JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY*

*OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

206. Plaintiff incorporates the preceding paragraphs.

207. It is unconstitutional to deprive of a person of their property without Due process of law. U.S. Constitution 14th Amendment; Michigan Constitution 1963 Article 1, Section 17.

208. The United States and Michigan Constitutions require that a person have a meaningful opportunity to be heard as part of their due process rights.

209. When city inspectors arrive at a rental location for a Chapter 14 code inspection, they ask property owners to sign a consent to search form. If the property owner does not sign the form, the property owner is penalized financially by being charged a one hour "failure to allow access" penalty of two hundred fifty-five dollars ($255.00) every time the property owner does not allow the inspector to access the property. The city will typically engage in three attempts to inspect a property prior to seeking and obtaining a search warrant. The City Code Enforcement Official will then proceed to conduct a Chapter 14 Non-Owner-Occupied Residential Property inspection of the exterior from

the public sidewalk at the first attempt to inspect. The Chapter 14 violations cited from the public sidewalk are then deployed as "probable cause" to obtain a search warrant by Code Enforcement Officials.

210. Being threatened with a fine for not signing a consent form is an aggressive act of intimidation that cannot comport with the rule of law.

211. The city has adopted an ordinance which mandates that Code Enforcement Officials provide written notice, within fourteen days of an inspection being conducted, to an owner of Non-Owner-Occupied Residential Property, of any alleged Chapter 14 Code violations cited, and to place the owner of the property on notice of their right to appeal any alleged violations cited by the Code Enforcement Official at the time of inspection.

**Sec. 14-45. Notices and orders.**

Notice of violations of this article and orders for the correction of such violations **shall be given to the owner or his or her agent within fourteen (14) working days from the date of inspection.** Notice shall:

1) Be in writing.

2) Identify the property involved, the day of the inspection and the name of the inspector.

3) **Cite the conditions that constitute violations of this article.**

4) **State the time allotted for correction of the violations.** Emergency hazards shall be corrected

98

immediately. For purposes of this section, the time allotted for correction of nonemergency violations shall be no less than thirty (30) and no more than ninety (90) calendar days.

**5) <u>Inform the owner of his or her right to appeal to the building code board of examiners and appeals.</u>**

(Code 1977, § 8.607; Ord. No. 2012-03, § 1, 2-21-12; Ord. No. 2020-09, § 2, 7-14-20)

212.   City of Jackson Code Enforcement Officials habitually and

illegally contravene Chapter 14-45 by their deliberate action of

failing to provide notice, within Fourteen days, in writing, to

owners of Non-Owner Occupied Residential structures of any

Chapter 14 exterior violations cited at the first inspection from

the public sidewalk, or any subsequent inspections thereafter, as

statutorily mandated by Chapter 14-45, to homeowner's who

deny access to city inspectors to inspect and then demand that

the city obtain a search warrant to inspect the property. This

unlawful and egregious action that the city Code Officials

engage in as a matter of practice, denies property owners the

ability to remedy any alleged code violations cited thereby

making moot the obtainment of a search warrant by the Code

Official and denying the property owner their due process

mandated by Jackson City Code to appeal any alleged Chapter

14 exterior violations pursuant to Chapter 14-45 (5) which is

unambiguously clear that a Code Enforcement Official must

**"Inform the owner of his or her right to appeal to the**

**building code board of examiners and appeals".**

213.  The Chapter 14-45 code is intended to provide an owner of

rental property with the minimum due process recognized by the

United States and State of Michigan constitutions. It is so vital to

the constitutional application of the Chapter 14 Article II code

that the Chapter 14-45 code itself recognizes this reality.

214.  The Chapter 14-45 code requires that the homeowner be

provided with a notice of deficiencies and a reasonable time to

make repairs or improvements in order to comply with the

applicable code and obtain a certificate of compliance.

215.  The Chapter 14-45 code requires that the homeowner be

provided with a procedural means to challenge the City's Code

Official and their interpretation or application of the Chapter 14

code.

216.  The Chapter 14-45 code requirements as set forth in that code

and in this complaint function as a required minimum due

process afforded to the homeowner before any legal or other

court action can be taken by the City against the homeowner. In

this fashion, they are conditions precedent to the City's ability to

lawfully issue any fine, fee, or other penalty against the

homeowner.

217.  The City's code of ordinances makes the failure to correct

Chapter 14 Article II code violations a strict-liability offense.

218.  The city's failure to provide the required statutory notice to

property owners who demand the city obtain a search warrant,

after city Code Officials conduct a Chapter 14 code inspection

from a public sidewalk, of any violations that may exist, if any

do in fact exist, deprives the property owner of any knowledge

of the contravention of the Chapter 14 Article II code and the

ability to appeal those alleged violations to an impartial panel of

individuals as proscribed by Chapter 14-45 code.

219.  Equally important is that the Chapter 14-45 code requires that

appeals to alleged code violations be heard by an impartial panel

of individuals who are not employed by the City and whom have

experience in the relevant areas being challenged, namely the

Building Code Board of Examiners and Appeals.

220.  The City's failures as set forth in this Complaint are violations of

Plaintiffs', and those similarly situated' s, constitutional due

process rights:

a)  The City fails to provide notice to property owners who

demand a search warrant of the city code official to conduct

an inspection that enumerates what alleged Chapter 14 code

exterior violations may exist after a public sidewalk Chapter

14 inspection is completed subsequent to an inspection

request is denied.

b) The City fails to provide notice to property owners who

demand a search warrant to inspect of a reasonable time

period in which to correct the alleged exterior deficiencies

that were the direct result of a public sidewalk inspection;

c) The City fails to notify the homeowner of his constitutional

right to appeal the code enforcement official's interpretation

of the Chapter 14-45 code as required by ordinance;

d) The City fails to notify the homeowner that the City may

lien his property for failing to comply;

e) The city completely ignores requests to present the code

enforcement official's list of alleged Exterior Chapter 14

violations, which the city is required to do pursuant to

Chapter 14-45, even when presented with a request to do so;

f) The City continues to issue fines, fees, and levies to

homeowners without completing these conditions precedent.

221. Pursuant to 42 USC § 1983, "**Every person who, under color
of any statute, ordinance, regulation, custom, or usage, of
any State or Territory or the District of Columbia, subjects,
or causes to be subjected, any citizen of the United States or**

**other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."**

222.   The due process rights of Plaintiffs and others similarly situated have been violated by the City and as a result Plaintiffs have incurred monetary and other damages. Left unchecked, the City and its agents and contractors will continue to administer the Chapter 14-45 code in violation of the due process rights of Plaintiffs and other homeowners who are similarly situated.

223.   In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The application of the ordinance by Code Enforcement Officials to homeowner's who demand the City obtain a search warrant to conduct an inspection violates constitutional guarantees of the right to procedural due process.

## <u>COUNT TEN</u>

### VIOLATION OF DUE PROCESS

*(Failure to provide proper notice and a meaningful opportunity to be heard)*

*FACIAL INVALIDITY OF ORDINANCE UNDER FOURTEENTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983*

224.   Plaintiff incorporates the preceding paragraphs.

225.   It is unconstitutional to deprive of a person of their property without Due process of law. U.S. Constitution 14th Amendment; Michigan Constitution 1963 Article 1, Section 17.

226.   The United States and Michigan Constitutions require that a person have a meaningful opportunity to be heard as part of their due process rights.

227.   The city of Jackson adopted an ordinance, Chapter 14-51, titled "Appeal", effective October 23, 2014.

228.   In Chapter 14-51 Appeal is unambiguously clear in its purpose that "**An owner, or agent thereof, whose building has been inspected, may apply to the building code board of examiners and appeals for a hearing <u>for reconsideration of the notice of violation(s) and any correction order(s) contained therein.</u>**"

229.   A modicum of Due Process was afforded to owners of Non-Owner-Occupied Residential Property within the confines of the Chapter 14 Article II Minimum Housing Standards Ordinance which allowed a homeowner to petition a nominally independent forum, the Building Code Board of Examiners and Appeals, for reconsideration of a cited Chapter 14 Article II violation and the remedy ordered by the Code Enforcement Official.

230.   The City of Jackson adopted a renamed ordinance, still enumerated as Chapter 14-51, now titled "Variance", effective October 23, 2015.

231.   Chapter 14-51, "Variance" is unambiguously clear in its purpose that an owner, or agent thereof, whose building has been inspected for Chapter 14 Article II code violations that they **"may apply to the building code board of examiners and appeals for a hearing, no later than ninety (90) days after the notice of violation is issued, for <u>consideration of receiving a specific</u> <u>variance to a requirement</u> of this article that is identified as a violation or correction order in the notice of violation(s)."**

232.   Nowhere else in the Chapter 14 Article II Minimum Housing Standards ordinance is the owner of a Non-Owner-Occupied Residential Property statutorily empowered to appeal to vacate

the edicts of a Code Enforcement Official.

233.    With the stroke of a pen, the city of Jackson, has unilaterally and summarily terminated a bedrock Constitutional right, Due Process, as it pertains to challenging the Chapter 14 Article II fiats of a Code Enforcement Official.

234.    The Building Code Board of Examiners and Appeals is in name only. Statutory authority no longer exists for the Board, pursuant to Chapter 14-51 "Variance", to hear and decide appeals where it is alleged by the appellant that the Code Enforcement Official erred in their interpretation of the provisions in Article II,  erred in standards of approval for an Article II violation, "overstepped" his or her authority to enforce a provision, or provide the board with the power to vacate a cited code violation or its remedy demanded by the code enforcement official as was previously proscribed in Chapter 14-51 Appeal. The board is strictly and statutorily limited to providing merely a variance to an Article II violation, even if the alleged violation was beyond the scope an authority of the Code Enforcement Official to cite.

235.    **Renaming the Chapter 14-51 ordinance from "Appeal" to "Variance", and subsequently altering the language of the ordinance so it is impossible for a homeowner to appeal and vacate a cited Chapter 14 code violation or its remedy within**

**the confines of the Building Code Board of Examiners and**

**Appeals, is clear intent, of the habitual, systemic, nefarious**

**and illegal actions the city engages in when enforcing**

**Chapter 14 code.**

236.  The City's failures as set forth in this Complaint are violations of
Plaintiffs' and those similarly situated, constitutional due process
rights.

237.  Pursuant to 42 USC § 1983, "**Every person who, under color**
**of any statute, ordinance, regulation, custom, or usage, of**
**any State or Territory or the District of Columbia, subjects,**
**or causes to be subjected, any citizen of the United States or**
**other person within the jurisdiction thereof to the**
**deprivation of any rights, privileges, or immunities secured**
**by the Constitution and laws, shall be liable to the party**
**injured in an action at law, suit in equity, or other proper**
**proceeding for redress, except that in any action brought**
**against a judicial officer for an act or omission taken in such**
**officer's judicial capacity, injunctive relief shall not be**
**granted unless a declaratory decree was violated or**
**declaratory relief was unavailable.**"

238.  The due process rights of Plaintiffs and others similarly situated
have been violated by the City and as a result Plaintiffs have

incurred monetary and other damages. Left unchecked, the City

and its agents and contractors will continue to administer the

Chapter 14-51 code in violation of the due process rights of

Plaintiffs and other homeowners who are similarly situated.

239.  In addition to the right to recover damages from the City and the

individual Defendants under Section 1983, Plaintiffs are also

entitled to the declaratory and injunctive relief from Defendants

prayed for below. The application of the ordinance by Code

Enforcement Officials to homeowner's who demand the City

obtain a search warrant to conduct an inspection violates

constitutional guarantees of the right to procedural due process.

## **COUNT ELEVEN**

**VIOLATION OF FOURTH AMENDMENT**

***(Facial Challenge: Warrantless Searches)***

***FACIAL INVALIDITY OF ORDINANCE UNDER FOURTH AMENDMENT
AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR
REDRESS UNDER 42 U.S.C. § 1983 AND ACCOUNTABILITY OF
INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. § 1983***

240.  Plaintiffs incorporate the preceding paragraphs.

241.  The Fourth Amendment to the U.S. Constitution prevents the

government from conducting unreasonable searches and

provides that warrants, based on probable cause, are required

before searching a house.

242.   As adopted by the City, Chapter 14 Section 14-42 Inspection

regimen of the Chapter 14 Housing Code allowed Code Officials

to enter rental properties for the purpose of inspection "**as are**

**necessary to enforce the provisions of this article"** or allowed

that an "**inspection shall be conducted in the manner best**

**calculated to secure compliance with this article and**

**appropriate to the needs of the community**" all without any

warrant or prior showing that reasonable cause exists for the

entry.

243.   When city inspectors arrive at a rental location for a Chapter 14

code inspection, they ask property owners to sign a consent to

search form. The Code Enforcement Official places the property

owner on notice that if he does not sign the consent form, the

property owner is penalized financially by being charged a one

hour "failure to allow access" penalty of two hundred fifty-five

dollars ($255.00) any time the property owner does not allow the

city Code Official to inspect the property. The city will typically

engage in three attempts to inspect a property prior to seeking

and obtaining a search warrant and the homeowner will

subsequently be penalized three times for not consenting to a

search of the property. The City Code Enforcement Official will

then proceed to conduct a Chapter 14 Non-Owner-Occupied

Residential Property inspection of the exterior from the public

sidewalk at the first attempt to inspect. **No written notice of any**

**alleged violations, as proscribed by Chapter14-45, is**

**provided to the homeowner. The Chapter 14 violations cited**

**from the public sidewalk are then deployed as "probable**

**cause" to obtain a search warrant by Code Enforcement**

**Officials.**

244.   Being threatened with a fine for not signing a consent form to

allow a Chapter 14 inspection is an aggressive act of

intimidation that cannot comport with the rule of law.

245.   If the owner or occupant of a property demands the city obtain a

search warrant for an inspection, the City of Jackson code

official "*shall* obtain a warrant from a court of competent

jurisdiction, Chapter 14-42(5). This section of the Chapter 14

code permits an *ex parte* warrantless inspection only in an

"emergency situation."

246.   As the City's inspection does not involve a criminal

investigation, the Supreme Court's administrative search

jurisprudence governs the legality of the ordinance. Under that

precedent, "the Supreme Court has held that absent consent,

exigent circumstances, or the like, in order for an administrative

110

search to be constitutional, **the subject of the search must be afforded an opportunity to obtain pre-compliance review before a neutral decisionmaker**." *NILI 2011, LLC et al v. City of Warren, Case No. 15-cv-13392 (E.D. Mich. Oct. 23, 2018)*

247. Two Supreme Court cases explain this doctrine. First, in Camara, the Court invalidated parts of a housing code that permitted the City of San Francisco employees to enter any premises to perform any function required by the city code. *Camara*, 387 U.S. at 525–26. The Supreme Court reasoned that the administrative searches were a "significant intrusion upon the interests protected by the Fourth Amendment." *Id.* at 534. Specifically, the Court explained that:

When the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization.

*Id.* at 532. Accordingly, a pre-compliance procedure was necessary for this housing code to comply with the Fourth Amendment. *Id.*

248. Second, the Supreme Court invalidated a Los Angeles ordinance requiring hotel operators to record and provide police their guest lists, as the ordinance subjected noncompliant hotel operators to a criminal misdemeanor prior to any pre-compliance review.

*Patel*, 135 S. Ct. at 2452. The Supreme Court observed that "[a] hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot," and that "[t]he Court has held that business owners cannot reasonably be put to this kind of choice." *Id.* (citing *Camara*, 387 U.S. at 533). **Likewise, in this instance, property owners who do not grant city inspectors access for an inspection face an immediate fine by being invoiced one hour at the current hourly inspection rate, regardless of whether the City of Jackson later obtains a warrant to enter.** This procedure, mandated by Chapter 14.42 (5), and which provides for no pre-compliance review before a neutral magistrate, is exactly the type of behavior prohibited by the Supreme Court in *Patel.*

249.    Furthermore, requiring that property owners relinquish their right to be free of unreasonable searches violates the unconstitutional conditions doctrine that maintains that if the government is prohibited from directly infringing upon the constitutional rights, the government may not affect the same result by offering tangible benefits in exchange for the citizen waiving those rights.

250.    The Supreme Court has held that "an overarching principle, known as the unconstitutional conditions doctrine, that

112

vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Management Dist.,* 133 S.Ct . 2586, at 2594 (2013).

## COUNT TWELVE

### ASSUMPSIT

251.   Plaintiffs incorporate the preceding paragraphs.

252.   The City has been extracting fees and/or penalties from Plaintiffs and those similarly situated by way of denial of procedural due process rights.

253.   Pursuant to city of Jackson Ordinance Chapter 14 Section 43 (3), "any action taken by the authority having jurisdiction on such premises shall be charged against the real estate upon which the structure is located and shall be a special assessment upon such real estate".

254.   Michigan law provides that an assumpsit action, a remedy for recovering an unlawful exaction, may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property.

## COUNT THIRTEEN

## MUNICIPAL LIABILITY

255.   Plaintiffs incorporate the preceding paragraphs.

256.   As set forth herein, the City and its Agents have administered the City Code in ways that deprive owners of Non-Owner-Occupied Residential Property and Foreclosed, Abandoned and Vacant property in the City of their due process rights.

257.   More specifically, the City through their policies and customs, implemented and enforced by their City Attorney's Building Department management and Code Enforcement Officials, has circumvented the requirements of due process by:

a. Systemically deploying an arbitrary, capricious and void for vagueness Chapter 14-42 Inspection regimen which allows city Code Officials unmitigated discretion to conduct Chapter 14-42 inspections of non-owner-occupied residential property **"as are necessary to enforce the provisions of this article"** and **"an inspection shall be conducted in the manner best calculated to secure compliance with this article"**

b. The provisions of the Chapter 14 Article II Minimum Housing Standards do not provide clearly enumerated standards or definitions sufficient to allow a person of ordinary intelligence to understand what is required to comply with the Chapter 14 Code Inspection or otherwise to get into compliance after

114

violations are alleged. As such, the provisions grant unbridled discretion to Code Officials resulting in the arbitrary and selective enforcement of the provisions, 14-72 "roof shall be reasonably weatherproof and waterproof", 14-13 "Presumption of Non-Owner-Occupied Property".

c.  Code Enforcement officials illegally and without statutory authority arbitrarily and capriciously applied Chapter 14 Article II Code as they inspect and then citing it as a violation.  Gutter "low hanging in center not sloped towards downspout" Chapter 14-72.

d. The city practice of illegally denying the issuing a Certificate of Compliance if fees are allegedly due and payable to the city, contrary to Chapter 14-42.1.

e. Issuing warrants for searches without clear, legal criteria.

f. Depriving homeowners of statutory notice in writing of any exterior violations cited within 14 days of conducting an exterior inspection from the sidewalk, Chapter 14-45, for homeowners who demand a search warrant be obtained.

g. Issuing tickets and violations against homeowner's without first complying with the procedural due process afforded by the United States and Michigan constitutions.

258.  In this regard and as a routine part of their policies and customs,

the City and their Building department management and Code

Officials deprived Plaintiffs, and thousands of other homeowners

in the City, of their rights to a meaningful opportunity to be

heard and thus their constitutional right to due process.

259.   The reason the city and their Building Department management

and Code Officials fail in this respect is because they are driven

by profit making rather than a legitimate governmental interest

in preserving and protecting the safety and welfare of occupants

of housing. The City's desired purpose is to unjustly enrich the

city by deploying arbitrary, capricious, constitutionally void for

their vagueness and violation of Due Process city of Jackson

Ordinances in order to generate funding to finance their cash-

strapped municipality.

260.   As a direct result of and due to the driving force behind the City

Attorney, Building Department management and Code Officials

refusal to provide constitutional due process, Plaintiff's, and

thousands like them have been forced to pay unlawful inspection

fees out of fear of continued levy. Plaintiffs and thousands like

them have also been forced to perform repairs on property for

items not required by the City Code at the mere whims of the

code officials without right to appeal to vacate. Given this

manner and form of the City's and their Agent's administration

116

of the Code, homeowners are deprived of their due process right

to notice and a meaningful opportunity to be heard.

## COUNT FOURTEEN

## UNJUST ENRICHMENT

261.  Plaintiffs incorporate the preceding paragraphs.

262.  Defendant City of Jackson has acquired and /or is in possession

of funds that it is not entitled to retain.

263.  A suit seeking the return of specific funds wrongfully collected

or held by a state actor may be maintained in equity.

264.  Unjust enrichment exists when there is:

1)  A benefit conferred by a plaintiff upon a defendant;

2)  Knowledge by the defendant of the benefit; and

3)  Retention of the benefit by the defendant under circumstances

where it would be unjust to do so without payment (i.e., the

"unjust enrichment" element).

265.  Plaintiff has disputed many fees forcefully paid to defendant.

266.  Through its Chapter 14 Section 14-42 inspection regimen fee

assessments, Non-Owner-Occupied Residential Property

Registration assessments, Foreclosed, Vacant or Abandoned

Property Registry and its Foreclosed, Vacant or Abandoned

Property "Periodic Monitoring" scheme, the defendant, City of

Jackson has acquired funds rightfully belonging to plaintiffs and

117

many others.

267. Since the adoption and promulgation of an arbitrary, capricious and Constitutionally void for its vagueness Chapter 14 Article II 14-42 Inspection Regimen ordinance enacted by the city from March 22, 2012 through July 6, 2021, when the city changed the Chapter 14-42 Inspection ordinance, the City of Jackson has unlawfully collected in Chapter 14 inspection fees through the city fiscal year 2019/20 of Three million nine hundred eighty four thousand six hundred forty seven dollars ($3,984,647.00). The city of Jackson budgeted amount of collected Chapter 14-Section 42 Non-Owner-Occupied Residential inspection fees for 2020/21 fiscal year, which ended June 30, 2021, and which is not available for public viewing as of the date of this complaint, anticipated an additional Seven hundred thousand dollars collected ($700,000.00) revenue from these arbitrary, capricious and constitutionally void for its vagueness inspection schedule.

268. Since the adoption and promulgation of an arbitrary, capricious and constitutionally void for its vagueness Article VI, Chapter 14 Section 403 Code, Foreclosed, Vacant or Abandoned Property Registry Ordinance, on February 23, 2012, the city has collected in Foreclosed, Vacant or Abandoned Property Registry registration fees the amount of Six hundred forty-five thousand

118

nine hundred thirty-five dollars ($645,935.00) through June 30,

2020. Furthermore, the city of Jackson budgeted an amount for

collected Chapter 14 Foreclosed, Vacant or Abandoned Property

Registry Ordinance registration fees for 2020/21 fiscal year,

which ended June 30, 2021, and which is not available for public

viewing as of the date of this complaint, an anticipated

additional one hundred thirty thousand dollars ($130,000.00) in

registration revenue from this arbitrary, capricious and

constitutionally void its vagueness registration ordinance.

269.  Defendant acquired these funds to fund unconstitutional searches

of plaintiff's properties.

270.  It would be unconscionable for the City of Jackson to retain

and/or abstain from returning these fees as well as penalty fees

for failure to allow Code Enforcement Officials access to a

property which were acquired from plaintiffs.

271.  Therefore, the City of Jackson must be compelled to disgorge

these funds that were acquired through unjust enrichment.

## COUNT FIFTEEN

### DECLARATORY RELIEF

272.  Plaintiffs incorporate the preceding paragraphs.

273.  An actual controversy exists between **903 West Washington,**

**LLC, 207 Second Street LLC, and the 321 West Mason LLC,**

and the City of Jackson and its Building Department

management and Code Enforcement Officials regarding their

administration of the City Code in violation of clearly

established due process rights.

274.   Plaintiffs and others similarly situated are entitled to a

declaration of their rights to due process in the context of the

City Code processes related to inspections, appeals, obtainment

of search a warrant, and obtaining certificates of compliance,

and ask that the Court determine that the City and their Agents

must comply with meaningful procedural due process

requirements mandated by the United States and Michigan

Constitutions.

## COUNT SIXTEEN

## DECLARATORY RELIEF

275.   Plaintiffs incorporate the preceding paragraphs.

276.   An actual controversy exists between **903 West Washington,**

**LLC, 207 Second Street LLC, and the 321 West Mason LLC,**

and the City of Jackson and its Building Department

management and Code Enforcement Officials regarding their

administration of the definition of the Chapter 14 Article II

"Minimum Housing Standards" City Code.

120

277. **Plaintiffs and others similarly situated are entitled to a declaration of their right to <u>compel the city of Jackson Code Enforcement Officials to deploy only the enumerated, strict, definition</u> of the Chapter 14 Code Article II" Minimum <u>Housing Standards"</u> as codified in ordinance by the city of Jackson in the context of the City Code processes related to inspections, appeals, and obtaining certificates of compliance, and ask that the Court determine that the City and their Agents must also comply with meaningful procedural due process requirements mandated by the United States and Michigan Constitutions.**

## <u>COUNT SEVENTEEN</u>

### VIOLATION OF 42 USC 1983

278. Plaintiffs incorporate the preceding paragraphs.

279. **42 USC 1983 states: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding**

121

**for redress, except that in any action brought against a**

**judicial officer for an act or omission taken in such officer's**

**judicial capacity, injunctive relief shall not be granted unless**

**a declaratory decree was violated or declaratory relief was**

**unavailable. For the purposes of this section, any Act**

**of Congress applicable exclusively to the District of**

**Columbia shall be considered to be a statute of the District of**

**Columbia.**

280.  The U.S. Supreme Court has declared that qualified immunity
      protects "all but the plainly incompetent or those who knowingly
      violate the law". *Malley v. Briggs, 475 U.S. 335, 341 (1986)*

281.  Furthermore, "officials are immune unless the law clearly
      proscribed the actions they took" *Anderson v. Creighton, 483
      U.S. 635, 639 (1987) (quoting Mitchell v. Forsyth, 472 U.S. 511
      (1985)).*

282.  Under Bivens v. Six Unknown Named Agents of Federal Bureau
      of Narcotics, 403 U.S. 388 (1971), even federal officials can be
      sued as individuals for violating constitutional rights.

283.  The Bivens Court wrote: "damages may be obtained for injuries
      consequent upon a violation of the Fourth Amendment by
      federal officials should hardly seem a surprising proposition.
      Historically, damages have been regarded as the ordinary

remedy for an invasion of personal interests in liberty. See

Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984

(1932); Page 396

284.  Pursuant to testimony in the Administrative Hearing Bureau on

February 10, 2021, Brian Taylor, Chief Building Official and

Assistant Direct of the Neighborhood and Economic Operations

Department for the city, which controls the activities of Chapter

14 Code Officials, is a licensed builder and Code Officer for

over twenty years and has "extensive experience in the

construction industry".

285.  Pursuant to testimony in the Administrative Hearing Bureau on

February 10, 2021, of Chapter 14 Code Enforcement Official

Ricardo John O'Connor, who is a licensed builder and certified

lead inspector, Chapter 14 Code Enforcement Officials receive

extensive training from the city of Jackson on Chapter 14 Code

statute and implementation.

286.  Shane LaPorte is the Director of Neighborhood and Economic

Operations Department for the city, which controls the activities

of Chapter 14 Code Officials, Assistant City Manager of

Jackson, and a former Jackson peace officer.

287.  The City of Jackson currently employs four Chapter 14 Code

Enforcement Officials: Ricardo John O'Connor, Michael Brandt,

Lydell Tanner and Dave Batterson.

288. Brandt, Tanner and Batterson are former peace officers.

289. William Mills, of recent, a Chapter 14 Code Official, is a former peace officer.

290. Pursuant to the Michigan Commission on Law Enforcement Standards (MCOLES), which statutorily approves the licensing of peace officers, requires that the mandatory basic peace officer training curriculum includes training in, but not limited to, Civil Rights, Search and Seizure (Fourth Amendment), Investigative skills, Constitutional Law, and Procedural Justice.

291. The individual Defendants named in this Complaint have received extensive training from the city of Jackson on the statutory provisions and enforcement of the Chapter 14 Code.

292. In the case before the court the agents of the city of Jackson have knowingly deprived citizens of the civil right to have a hold and enjoy the benefit real property by, among others, with their following actions:

    a. Nefariously and intentionally deploying a constitutionally void vague rental inspection process upon both occupied, and without statutory authority, upon unoccupied residential real property.

    b. Nefariously citing Chapter 14 Article II violations which

transcend the limits of their statutory authority and then

intentionally deploying such unlawful violations as

probable cause to obtain search warrants.

c.  Nefariously circumventing statutory notice requirements

of violations by failing to tender notice within the

statutory time period, of exterior violations cited from a

public sidewalk to homeowners who refuse to execute a

consent to search document thereby violating their

Constitutional right to Due Process.

d.  Enforcing a Chapter 14 Non-Owner-Occupied

Residential Property inspection regimen upon

homeowners who place Code Enforcement Officials on

notice that a structure is statutorily defined, pursuant to

ordinance, as Foreclosed, Abandoned or Vacant and

therefore exempt from a Chapter 14 Non-Owner-

Occupied Residential Property Inspection regimen.

e.  Manipulating statute that is deliberately vague to aid

Code Enforcement officials with arbitrary and capricious

enforcement.

f.  Enforcing statute that is an unambiguously clear

constitutional violation of Due Process.

g.  Enforcing a Chapter 14 Non-Owner-Occupied

Residential Property inspection regimen upon homeowners who place Code Enforcement Officials on notice that a structure is statutorily defined, pursuant to ordinance, as Foreclosed, Abandoned or Vacant and therefore exempt from a Chapter 14 Non-Owner-Occupied Residential Property Inspection regimen **which subsequently results in the demolition of the property.**

h. Defaulting an Abandoned, Vacant or Foreclosed Property as defined pursuant to statute, to the status of Non-Owner-Occupied Resident Property thereby subjecting the property to a 14-42 Inspection regimen for the failure of the owner to register the property as Abandoned, Vacant, or Foreclosed property without statutory authority to do so.

293. **The city of Jackson continues to deploy, without statutory authority to do so, a now modified, as of July 7, 2021, Chapter 14-42 Inspection regimen, whose applicability, as defined in Chapter 14-29, is to existing structures "which constitute a menace to the safety, health, and welfare of the occupants" to unoccupied structures.**

294. The employees who inspect and register property in the City of Jackson, act under color of local authority, and, therefore, joint

and several liability-both personally and in their official

capacity, should apply to each city employee engaged in these

nefarious actions.

295.   The individuals named is this complaint are personally liable to

the Plaintiff as their Chapter 14 enforcement actions demonstrate

a strong likelihood that pursuant to Supreme Court

jurisprudence, that they are not protected by qualified immunity,

as "all but the plainly incompetent or those who knowingly

violate the law". obtain qualified personal immunity. *Malley v.*

*Briggs, 475 U.S. 335, 341 (1986)*

296.   Plaintiffs and the class of those similarly situated have a right to

procedural due process to proper notice and to challenge or

otherwise appeal a determination of the City's code official

before any enforcement of the court action was taken.

297.   Despite these rights, Defendant's customs and policies

eliminated Plaintiffs' (and similarly situated class Plaintiffs')

rights without any due process or adequate notice of any kind.

298.   As set forth above Defendants then proceeded to prosecute

Plaintiffs and collect fines and fees from them, and those

similarly situated, in violation of their due process rights.

299.   The City has deprived homeowners within its boundaries of

property and rights related thereto and is liable to the Plaintiffs

and those similarly situated pursuant to 42 USC 1983.

300.  The deprivation of property under color of law has been affected by not only the City of Jackson but by the City Attorney's building department management and code enforcement officials acting in concert with the city.

301.  Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

## COUNT EIGHTEEN

## REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

## 207 SECOND STREET AND OTHERS

## SIMILARLY SITUATED

302.  Plaintiffs incorporate the preceding paragraphs.

303.  The City, through its building department management and Code Enforcement Officials, continues to issue and enforce inspection orders in direct violation of the constitutional due process requirements set forth in the Michigan Constitution, United States Constitution and Supreme Court jurisprudence.

304.  Plaintiffs, and those similarly situated, are still being denied their right to challenge the issuance of an Administrative Search Warrant as set forth by the United States Constitution and

128

Supreme Court jurisprudence.

305. Unchecked, the City, and acting in consort with Building Department management and Code Enforcement Officials, will continue to issue tickets to Plaintiffs and those similarly situated for failing to comply with a vaguely worded City Code that does not give property owners clear notice of what constitutes a violation and an Administrative Search Warrant process that contravenes the Constitution, Supreme Court jurisprudence and State statute. As such, the City will continue to reap an illegal windfall for continuing to violate clearly established constitutional rights.

306. Given these circumstances, the losses to Plaintiffs and other owners of real property similarly situated in the City are imminent and as such Plaintiffs request injunctive relief and an order stopping the City and its Building Department Management and Code Enforcement Officials from its illegal and unconstitutional practices including the issuance of administrative search warrants without the subject of the search warrant attending and receiving an impartial hearing and **the application of an inspection ordinance whose stated purpose is to safeguard the health, safety and welfare of the *occupants* of dwellings to foreclosed, vacant or abandoned,  unoccupied**

**structures.**

307. **The city of Jackson achieves its goal of turning a vacant property into a non-owner-occupied property by means of enforcing without statutory authority a now modified, as of July 7, 2021Chapter 14-42 Inspection regimen. Ironically, the applicability, as defined in Chapter 14-29, is to existing structures "which constitute a menace to the safety, health, and welfare of the occupants to structures that have been unoccupied for a substantial period of time.**

308. Once the certificate expires under the Foreclosed, Vacant, and Abandoned registration, if the owner does not re-register the dwelling as a Foreclosed, Vacant and Abandoned property, the City will automatically default the property to the Non-Owner Occupied Residential Property inspection regimen.

309. Nowhere in Chapter 14 Code does it provide the statutory authority to the City for the automatic default of a Foreclosed, Vacant, or Abandoned property to default to the status of a Non Owner Occupied Residential Property for the failure of the owner  to register the property as Foreclosed , Vacant or Abandoned.

310. The 207 Second Street LLC has refused to sign a consent form to allow the City to conduct a search of the premises for Chapter

14 Non Owner Occupied Residential Property violations and

subsequently demanded the city of Jackson obtain a Search

Warrant to conduct an inspection of 207 Second Street in the

city of Jackson on four separate occasions between September

14, 2021 and March 16, 2022.

311.   On each occasion the 207 Second Street LLC was penalized

Two hundred and fifty-five dollars ($255.00) for refusing to

provide consent to City Code Enforcement Official. This action

by Jackson Code Officials does not comport with Supreme Court

jurisprudence.

312.   Representatives of the 207 Second Street LLC have

unambiguously and unequivocally on numerous occasions

demonstrated to the City of Jackson that the structure located at

207 Second Street is unoccupied and therefore exempt to a

Chapter 14-42 Non-Owner-Occupied Residential Property

Inspection regimen.

313.   **City Code Enforcement Officials have ignored these**

**protestations from representatives of the 207 Second Street**

**LLC and have scheduled a Chapter 14-42 Non-Owner-**

**Occupied Residential Property inspection for May 26, 2022**

**at 9:00 a.m.**

314.   The 207 Second Street LLC has not received any

correspondence from the city of Jackson as to the day, date, time and location of the application to obtain a search warrant by City Code Enforcement Officials as required by the Constitution of the United States and Supreme Court jurisprudence.

315. Upon information and belief, the City intends to deprive members of the 207 Second Street LLC of their due process right to be afforded an opportunity to be heard by an impartial decision maker to protest the issuance of a search warrant.

316. Upon information and belief, the City intends to demolish the property deploying alleged violations from an unlawfully conducted Chapter 14 Non-Owner-Occupied Inspection regimen as justification to do so.

317. Plaintiff has no adequate remedy at law.

318. Plaintiff will likely prevail on the merits.

319. Plaintiff will suffer imminent and irreparable harm unless an injunction is issued.

320. The risk of loss to Plaintiff exceeds any risk to the Defendant if an injunction is not issued.

321. WHEREFORE, Plaintiff respectfully requests this Honorable Court to:

    1) Issue a preliminary and permanent injunction prohibiting the City from demolition of said property.

2) Issue a preliminary and permanent injunction prohibiting the City from seeking an ex parte search warrant to conduct a Chapter 14 Non-Owner-Occupied Residential Property inspection regimen search of 207 Second Street, and of others similarly situated, of an unoccupied foreclosed, vacant, abandoned dwelling as defined pursuant to Chapter 14-402.

## VI.   CLASS ALLEGATIONS

322.   Plaintiffs incorporate the preceding paragraphs.

323.   All Plaintiffs and putative class members have suffered and continue to suffer similar harm due to having their property taken by the City without minimum due process. After not receiving adequate notice or a meaningful opportunity to be heard, the Plaintiffs and class members are then faced with multiplying levies for failure to pay improperly assessed fees.

324.   <u>Class Definition.</u> Plaintiffs seeks to certify the following classes:

a. All persons and entities who own or owned Non-Owner-Occupied Residential Property located within the city of Jackson and who were illegally invoiced for inspection fees from Constitutionally void for its vagueness Chapter 14 inspection regimen from the effective date of the ordinance on March 22, 2012 and up to and including July 6, 2021 and

133

subsequently paid them.

b. All persons and entities who refused to sign a consent to search pursuant to a Chapter 14 inspection demand by the city whereby an exterior code deficiency inspection was then conducted by the City from the public sidewalk, without providing a copy of the deficiency report to the homeowner within the statutorily Chapter 14 mandated time period for notice of violation which impaired their ability to appeal such deficiency determination to an impartial board and the person or entity, who was then financially penalized for the refusal to sign a consent form, paid the penalties and subsequently consented to a search .

c. All persons and entities who have refused to sign a consent to search pursuant to a Chapter 14 inspection demand by the city and the person or entity was financially penalized for the refusal to sign a consent form and which the city subsequently obtained and executed an ex parte search warrant without affording the subject of the search the opportunity to be heard in front of a neutral observer and the person or entity subsequently paid the penalties and search warrant fees.

d. All persons and entities who currently own or owned

Foreclosed, Vacant or Abandoned real property located within the city of Jackson and who were coerced under penalty of law to register their real property and were illegally invoiced for registration fees and subsequently paid those fees, from a Constitutionally void Chapter 14 Foreclosed, Vacant, or Abandoned Property Registration ordinance which compelled a registrant , under threat of fine and penalty, to surrender their Fourth Amendment rights by proving to the city, with their property registration, "A statement allowing authorized staff of the city to enter the premises for purposes of inspection", for an Article of the Chapter 14 ordinance which did not statutorily mandate for an interior inspection of foreclosed, vacant, or abandoned Property .

e. All persons and entities who currently own or at one time owned Foreclosed, Vacant or Abandoned real property located within the City of Jackson and who were coerced under penalty of law to remunerate the city for "monitoring" fees from a Constitutionally void for its vagueness a Chapter 14 ordinance which did not provide a definition of "monitoring" or a statutorily mandated interior or exterior inspection schedule.

135

f.  All persons and entities who owned Foreclosed, Vacant or

Abandoned real property from March 22, 2012 to July 6,

2021, located within the city of Jackson, and who were the

victim of a Constitutionally void for its vagueness Chapter 14

Non-Owner-Occupied Residential Inspection regimen illegally

applied by the City to their Foreclosed, Vacant or Abandoned

unoccupied real property which resulted in the subsequent

demolition of that property.

325.  <u>Numerosity.</u> The proposed classes are so numerous that joinder

of all members is impracticable. While the exact number of class

members is not now known, Plaintiffs believe the class number

is in excess of 2,000 members. These members may be readily

identified from Defendant's own records.

326.  <u>Commonality.</u> There are questions of law or fact common to the

members of the class that predominate over questions affecting

only individual members.

327.   Among the questions of law or fact common to the class are the

following:

a) Did the City provide proper notice of violations prior to

taking court action?

b) Does the City of Jackson Code give clear notice to property

owners of what behavior is permitted, and what behavior is

136

prohibited?

c) Does the warrant procedure that is used to search the homes
of the residential property owners comply with the United
States and Michigan constitutions?

d) Why is the city applying, without statutory authority, an
inspection scheme whose stated purpose is "to safeguard the
health, safety and welfare of the *occupants* of dwellings" to
Foreclosed, Vacant, and Abandoned *unoccupied* dwellings?

e) Why does the city require a registrant of a Foreclosed,
Vacant, or Abandoned property to surrender their Fourth
Amendment rights?

f) Why did the city of Jackson deploy a constitutionally void
for its vagueness Chapter 14-42 illegal inspection scheme
while collecting millions of dollars in fees for doing so?

328. <u>Typicality.</u> The harm suffered by Plaintiffs is typical of the harm
suffered by other class members differing only in amount.
Accordingly, the claims of Plaintiffs are the same as those of the other
class members. Resolution of these common questions will determine
the liability of the Defendant to Plaintiffs and the class members in
general. Thus, the claims properly form the basis for class treatment in
this case.

329. Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

330. Adequacy of Representation. The represented parties will fairly and adequately assert and protect the interest of the class. Plaintiffs have already demonstrated their willingness to pursue this litigation on their own behalf, and they have no known conflicts with the class members.

331. Plaintiff's counsel will also fairly and adequately represent the interest of the class. Attorney John W. Toivonen is well versed in the facts and substantive law underlying the Plaintiff's claims and has 12 years of general litigation experience.

332. This class action is maintainable under Federal Rule of Civil Procedure 23(b).

333. The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

a) The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

138

b) The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

334. The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendants have and continue to deprive homeowners of their right to appear to contest the issuance of an Administrative Search Warrant, forced real property owners to endure a constitutionally void for vague Chapter 14 inspection scheme, registration requirement and "monitoring" ordinances while simultaneously collecting nearly Seven million dollars ($7,000,000.00) in unlawful inspection, registration, and "monitoring" fees, and of providing a clear notice of alleged real property code deficiency in violation of the due process rights of the class. See the City of Jackson Budget Revenue Detail for Years 2012-2022 set forth as Exhibit "FF".

335. The questions of law or fact common to class members

predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

336.  The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

337.   In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

338.  It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

339.  Plaintiffs are not aware of any members of the proposed class that have filed similar litigation nor are Plaintiffs aware of any pending similar litigation in which the city is a Defendant.

340.  The class action is the appropriate method for the fair and efficient adjudication of the controversy. The legal and factual bases for the Plaintiffs' claims are the same as for the claims of all class members. The only difference between individual claims is the severity of the harm and resulting damages.

140

Adjudicating this case on a class wide basis will promote

substantial judicial economy by eliminating the likelihood of

multiple cases (perhaps thousands) turning on the same

questions of law and fact. The class action will also provide the

Plaintiffs with the only meaningful avenue for relief, due to the

economy of spreading their litigation costs, thereby reducing

each individual's expenses over the class and enabling counsel to

pursue the litigation by aggregating the claims. Further, the class

action will save the Defendants the burden of defending multiple

suits in multiple forums.

## VII.   RELIEF REQUESTED

WHEREFORE, on behalf of itself and others similarly situated, 903 West

Washington LLC, 207 Second LLC, and the 321 West Mason LLC requests

the following relief:

A. That this action be determined as proper to be maintained as a class

action pursuant to Federal Rules of Civil Procedure 23(b), together

with an order appointing the named Plaintiffs to represent the class

and subclass and certifying Plaintiffs' counsel to represent the class

and subclass;

B. The injunctive and declaratory relief as applicable and specified in

Counts Fifteen, and Seventeen and Eighteen;

C. An award of damages, including all applicable interest, in an amount

to be determined at trial;

D. An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988 or on other grounds;

E. An award of an incentive fee to the named Plaintiffs for having the courage to come forward and challenge the City of Jackson Chapter 14 Ordinance and the manner in which it is administered; and/or

F. Any other relief as necessary to redress the violation of Plaintiff's rights secured by the Constitution and laws.

## VIII.  RIGHT TO AMEND

Plaintiffs reserve their right to amend the Complaint pursuant to the Federal Rules of Civil Procedure

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

JOHN W. TOIVONEN
Counsel for Plaintiffs
120 N. Washington, Suite 300
Lansing, MI 48933
(517) 402-5229
(888) 459-8529


/s/ John W. Toivonen
By: John W. Toivonen (P73130)
John@jwtlawgroup.com