## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

903 WEST WASHINGTON LLC, et al.,

     Plaintiffs,

                           Case No. 22-11110
                           Hon. Jonathan J.C. Grey

v.

CITY OF JACKSON, et al.,

     Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 42)

     Plaintiffs 903 West Washington, LLC, 207 Second Street, LLC, and 321 West Mason, LLC filed this cause of action alleging, generally, that Defendant City of Jackson's (the "City") housing ordinances are facially invalid, that the City's enforcement of the ordinances violated plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that enforcement of the ordinances unjustly enriched the City. (ECF No. 1.) This matter is before the Court on defendants' motion for summary judgment. (ECF No. 42.) The motion is

fully briefed. (ECF Nos. 44–46.)[1] For the following reasons, the Court **GRANTS** defendants' motion for summary judgment. (ECF No. 42.)

## I.    BACKGROUND

Plaintiffs' claims arise out of three articles of Chapter 14 of the City's code of municipal ordinances ("Chapter 14"): (1) Article I, §§ 14-1–14-24, the "Non-owners-Occupied Residential Property Registry" ("NOORPR") Ordinance; (2) Article VI, §§ 14-400–14-499 the "Foreclosed, Vacant, and Abandoned Property Registry" ("FVAPR") Ordinance; and (3) Article II, §§ 14-25–14-120, the "Minimum Housing Standards" Ordinance ("Article II"). (ECF No. 6-2, PageID.313–323, 370–381, 323–355.) Plaintiffs each own property in the City.

Before this case was reassigned to the undersigned, it was assigned to the Honorable Stephen J. Murphy, III. On December 9, 2022, Judge Murphy dismissed counts five, eleven, twelve, fifteen, sixteen, seventeen, and eighteen. (ECF No. 15.) Judge Murphy also dismissed count eight in part and limited the scope of that count to an "existence of an illegal official policy or legislative enactment" theory of liability. (ECF No. 15,

---

[1] The Court finds that oral argument will not aid in its disposition of the motion; therefore, the Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

2

PageID.657.) Judge Murphy also held that no damages were recoverable for actions which took place prior to May 21, 2019, the deadline for the relevant statute of limitations. (ECF No. 15, PageID.651.) The Court consequently disregards all events which occurred before that date.[2]

## A.    Language of the Ordinances

Violation of either the NOORPR or FVAPR Ordinance is considered a "blight violation subject to the penalties provided in chapter 2.5 of this Code." (ECF No. 6-2, PageID.322, 381.) Under the NOORPR Ordinance, a non-owner-occupied residential dwelling or unit is defined as:

> Any residential dwelling or unit constructed, intended, or currently used as habitable space in which the owner of the dwelling or unit does not reside, or where individuals other than or in addition to the owner reside, whether pursuant to an oral or written lease or for other valuable consideration including, but not limited to, cash, barter of goods and services, and imputed rent.

(ECF No. 6-2, PageID.314.)

---

[2] The Court further notes that constitutionality of the NOORPR and FVAPR Ordinance has been repeatedly challenged on various grounds. *See Berkemeier v. City of Jackson*, No. 23-1641, 2024 WL 1718680 (6th Cir. Apr. 22, 2024); *Williams v. City of Jackson*, No. 21-10749, 2022 WL 4378688 (E.D. Mich. Sept. 22, 2022); *232 W. Mason LLC v. City of Jackson, et al.*, Case No. 24-cv-11051 (E.D. Mich.); *Tulloch v. City of Jackson*, Case No. 18-cv-11885 (E.D. Mich.); *Fox et al. v. City of Jackson, Michigan et al.*, Case No. 22-cv-11298 (E.D. Mich.).

Under the NOORPR Ordinance, all NOORPs must be registered with the City and the owner must pay an application fee along with "all outstanding inspection fees and applicable late charges." (*Id.* at PageID.316–317.) The Ordinance indicates that the City claims the right to withhold registration until "the proper fees have been paid." (*Id.*) Registration is required every three years and "shall be issued" if an application form is properly submitted and all relevant fees are paid. (ECF No. 6-2, PageID.318.)

Similarly, FVAPR properties must be registered with the City and go through an initial inspection before being granted FVAPR status. (*Id.* at PageID.373.) Registration under the FVAPR Ordinance is also valid for three years. (*Id.* at PageID.375.) The FVAPR Ordinance defines vacant property as:

> [A] parcel of real property that has been unoccupied continuously for a period of thirty (30) days or more, and is either:
>
> (1) Subject to foreclosure as defined in this article;
> (2) Has been abandoned by the owner;
> (3) Is under a condemnation notice or order to vacate;
> (4) Is not in compliance with the housing, electrical, mechanical, plumbing, or building codes;
> (5) Has one (1) or more broken or boarded windows;
> (6) Is open to casual entry or trespass;
> (7) Is deteriorating due to a lack of maintenance or neglect;

(8) Has a building or structure for which a building permit has expired that is partially completed and is not fit for human occupancy;

(9) Contains a structure that is structurally unsound;

(10) Has utilities disconnected or not in use;

(11) Has taxes in arrears for more than one (1) year; or

(12) Is a potential hazard or danger to the safety of persons.

(ECF No. 6-2, PageID.373.)

Further, to register under the FVAPR Ordinance, the registration must contain the "legal name, address, telephone number and date of birth of the owner" and, if the owner is a limited liability company, the "names, addresses and telephone numbers" of all members. (*Id.* at PageID.374.) The registration must also contain "[a]ny additional information required by the department of neighborhood and economic operations[.]" (*Id.*)

Foreclosed, vacant, and abandoned properties are subject to "periodic inspections" and "monitoring," the cost of which is to be covered by the owner. (*Id.* at PageID.377.)   Section 14-413 further assigns administrative charges, such as search warrants and the cost of preparing for prosecution, to the owner of the property. (*Id.*)

The Housing Ordinance requires both NOORPR and FVAPR properties to be subject to inspections "as necessary to enforce the

provisions" of Article II, with the goal "to safeguard the health, safety, and welfare of the occupants of dwellings and of the general public." (ECF No. 6-2, PageID.332.) Chapter 14 empowers the chief building official, fire official, chief of police or their designated representatives to conduct the inspections. (*Id.* at PageID.332.) Section 14-43 of Article II states that owners of NOORPs will be charged for all inspections "conducted pursuant to this article." (*Id.* at PageID.334.)

In cases of emergency, if City officials have "reasonable grounds to believe that condition hazardous to health or safety exists [,]" officials may enter at any time for an inspection. (*Id.* at PageID.332.) However, in a "nonemergency situation or where the owner or occupant of any dwelling demands a warrant for inspection of the premises, the . . . official shall obtain a warrant from a court of competent jurisdiction." (*Id.*)

If a City official observes a violation of the Article II during the inspection, "the chief building official or his or her authorized representative shall file a written report of such violations with the department." (*Id.* at PageID.335.) Once the official files a report, they must also provide written notice to the owner or the owner's agent within

6

fourteen working days of the inspection, citing the violations and stating, "the time allotted for correction of the violations." (ECF No. 6-2, PageID.335.)

### B.   Conduct at Issue

This case concerns three LLCs and their corresponding properties: 903 West Washington, 207 Second Street, and 321 West Mason, which are all located within the City. The property 207 Second Street was registered as non-owner occupied (NOORP) from 2015 until the registration expired in 2016. (ECF No. 42-3, PageID.1507.) After that, the registration status is unclear. The owner attempted to register the property in the NOORPR. (*Id.*) However, after non-payment of registration fees and refusal of inspection, the City closed the registration.

From September 24, 2021, until May 26, 2022, the City attempted to inspect the property at 207 Second Street. The owner refused access to the property on three separate occasions. (ECF No. 42-3, PageID.1533.) The City charged him a "lockout fee" of $255 for each refusal. (*Id.*) After the third "lockout," the City acquired a search warrant, which was not executed due to the filing of this lawsuit. (ECF No. 42-3, PageID.1506.)

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986).

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of

proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322–323.

## III.  ANALYSIS

Preliminarily, the Court notes that many of plaintiffs' arguments are undeveloped, and there is a notable lack of citation to binding authority. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (citation and internal quotation marks omitted); *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 584 (6th Cir. 2018). Nevertheless, the Court addresses the substantive arguments below.

### A.  Standing

Before a court can evaluate the merits of a claim, it must first address the threshold question of standing under Article III, § 2 of the U.S. Constitution. Standing is present when a plaintiff establishes the following three elements: (1) "an injury in fact" that is concrete and particularized; (2) "a causal connection between the injury and the

9

conduct complained of" traceable to the defendant; and (3) it is likely that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).

"[C]ertain harms readily qualify as concrete injuries under Article III . . . such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Certain intangible harms, including reputational harms, disclosure of private information, intrusion upon seclusion, and harms specified by the Constitution also are sufficiently concrete to satisfy this element of standing. *Id*. To determine if a harm is sufficiently concrete, courts assess whether the "plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.*

In their motion for summary judgment, defendants allege that plaintiffs lack Article III standing regarding claims four and six, which are both vagueness challenges. (ECF No. 42, PageID.1401.) Specifically, defendants argue that plaintiffs did not suffer an actual injury "based on the allegedly vague provision during the applicable period of limitations." (ECF No. 42, PageID.1402.) Plaintiffs respond that they have suffered an injury in fact due to the FVAPR registration and monitoring fees. (ECF No. 45, PageID.1808.)

10

The Sixth Circuit has held that "[e]ven if a statute might be vague as it relates to other, hypothetical [individuals], courts will not entertain vagueness challenges on behalf of [individuals] whose conduct clearly falls within the ambit of the statute." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012). So, to have standing to pursue a vagueness challenge, plaintiffs must show that their "proposed conduct does not clearly fall within the scope" of the challenged ordinance. *McKay v. Federspiel*, 823 F.3d 862, 871 (6th Cir. 2016).

### 1.    Count Four

Count four alleges that the FVAPR Ordinance is unconstitutionally vague, and that the Ordinance's application to the plaintiffs resulted in violations of their due process. (ECF No. 1, PageID.77.) The "actual injury" identified by plaintiffs is the fact that the City required the owner's physical address to register the property. (ECF No. 44, PageID.1795.)

According to the plaintiffs, Leah Kalish, an agent for the 207 Second Street LLC, attempted to register 207 Second Street in the FVA Registry but the City refused to accept the registration until she provided a physical, non-P.O. Box, address for the owner. (ECF No. 44,

11

PageID.1795.) Defendants do not contest the fact that a physical address was required, but they argue that being required to provide a physical address is not a legal injury. (ECF No. 42, PageID.1403.) Further, it is uncontested that the property was successfully registered after the physical address was provided, from June 2019 until August 2021. (ECF No. 42-3, PageID.1507; ECF No. 45-4, PageID.1829.)

The Court is unconvinced that being required to provide a residential address instead of a P.O. Box address constitutes an actual injury, as plaintiffs cite no authority to support a finding that the City was unable to require plaintiffs to provide that information as a condition for registration. Further, plaintiffs have cited no authority or traditional analog suggesting that this is a sufficiently concrete injury. As it is uncontested that the property was registered, no injury exists. Without an injury, plaintiffs' lack standing to challenge the FVAPR Ordinance.

Further, this section of the FVAPR Ordinance is not vague as applied to plaintiffs' proposed conduct, which is clearly covered by other sections of the Ordinance which mandate that registration must contain the "addresses" of the members of any owner that is a limited liability company. (ECF No. 6-2, PageID.374.) An average person of ordinary

intelligence would reasonably read this section as requiring a physical address, particularly given the fact the Ordinance requires an owner live a reasonable distance from the City or otherwise have a local representative. *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001); § 14-401. Consequently, the Court finds that plaintiffs lack standing to bring count four. Defendants' motion for summary judgment on count four is **GRANTED**.

### 2.    Count Six

For count six, plaintiffs allege that the vagueness of the term "monitoring" in the FVAPR Ordinance has led to economic injuries, specifically a monthly monitoring fee of $379.69. (ECF No. 1, PageID.84.) This fee is sufficient to meet the injury in fact requirement. *See TransUnion*, 594 U.S. at 417. However, there is insufficient causal connection between the conduct complained of and the injury in fact as the defendants' interpretation of the term "monitoring" is clearly within the scope of the Ordinance.

The Court acknowledges that the alleged vagueness of the term "monitoring" does not result in the fee at issue. The challenged fee is a flat quarterly fee which is charged regardless of whether a specific

property was monitored. It is not the case that each property owner is charged a fee for each instance of monitoring; it is a flat fee. However, if the Ordinance is ultimately found to be unconstitutionally vague, the fee would be impermissible.

Here, it is dispositive that the proposed conduct is clearly within the plain text of the Ordinance. Plaintiffs argue that the "monitoring" required under the FVAPR Ordinance is unconstitutionally vague as it is undefined and there is no clear standard set for the monitoring. (ECF No. 1, PageID.82–86.) However, plaintiffs again provide no evidence, example, or explanation of how the term "monitoring" is vague as applied to them. For those reasons, defendants' motion for summary judgment is **GRANTED** as to count six.

## B.   Void-for-Vagueness

Facial vagueness challenges are "disfavored for several reasons," including that they often "rest on speculation." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Plaintiffs confront a heavy burden when advancing a facial constitutional challenge to an ordinance. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).

14

Further, "the degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982)). A law that imposes criminal sanctions or covers "a substantial amount of constitutionally protected conduct" requires a high level of definiteness to withstand a facial due process challenge. *Id.* (quoting *Village of Hoffman Estates*, 455 U.S. at 494).

In contrast, civil laws not implicating the First Amendment are reviewed less stringently than criminal laws "because the consequences of imprecision are qualitatively less severe." *Village of Hoffman Estates*, 455 U.S. at 499. In the case of civil laws which do not involve First Amendment concerns, a facial challenge will succeed "only if the enactment is impermissibly vague in all of its applications[.]" *Id.* at 495.

"[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975) (citations omitted). Consequently, plaintiffs bear "the burden of establishing that the statute is vague as applied to [their] particular case,

15

not merely that the statute could be construed as vague in some hypothetical situation." *Krumrei*, 258 F.3d at 537.

There is no allegation that the Housing Ordinance implicates First Amendment considerations. Further, violation of the FVAPR   or NOORPR Ordinance is considered a blight violation under Chapter 2.5, which is a civil infraction. *See* Mich. Comp. Laws §§ 117.41, 117.4a, and 117.4r. Consequently, to succeed in their vagueness challenges plaintiffs must show that the challenged ordinance is vague as applied to them or in all applications. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

Plaintiffs primarily rely on *American-Arab Anti-Discrimination Committee v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005) and *Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553 (6th Cir. 1999) in support of their argument that the challenged portions of the Ordinances are unconstitutionally vague. However, these cases are not directly analogous to the case at hand as *American-Arab Anti-Discrimination Committee* involved a regulation on speech and *Belle Maer Harbor* involved a criminal law, so the higher standard of review applied in both cases. Both cases explicitly recognize this sorting method, as the *Belle Maer Harbor* court stated a "relatively strict" test was

16

required because the ordinance at issue imposed criminal penalties for its violation. 170 F.3d at 557.

Finally, "failure to define a term within a statute or ordinance does not render the statute unconstitutionally vague, where the common meaning of the word provides both adequate notice of the conduct prohibited and of the standards for enforcement." *Belle Maer Harbor,* 170 F.3d at 557. The constitutionality of an ordinance is a question of law. *Krumrei*, 258 F.3d at 537.

### 1.    Count One – Article II, Section 14-42

The first portion of the Code to which plaintiffs object is Article II, § 14-42, entitled "Inspections." Article II establishes minimum housing standards generally and is not part of the NOORPR or FVAPR Ordnances. The relevant portion of § 14-42 reads as follows:

> In order that they may perform their duties to safeguard the health, safety and welfare of the occupants of dwellings and of the general public, the chief building official, chief of police and fire official are hereby authorized to make or cause to be made such inspections of dwellings or dwelling units ***as are necessary*** to enforce the provisions of this article[.]

(ECF No. 6-2, PageID.332 (emphasis added).)

Article II further states that the inspection "shall be conducted ***in the manner best calculated*** to secure compliance with this article and

17

appropriate to the needs of the community." (*Id.* (emphasis added).) Section 14-42.1 then provides that a "certificate of compliance shall be issued only upon an inspection of the premises[.]" (ECF No. 6-2, PageID.333.)

Plaintiffs argue that § 14-42 is unconstitutionally vague as the phrases "as are necessary" and "in the manner best calculated" are undefined. (ECF No. 1, PageID.61.) At bottom, plaintiffs object to the fact that there is no set inspection schedule under the NOORPR Ordinance and the fact that properties may be subject to multiple inspections within a given permitting period.

Plaintiffs cite no specific conduct relevant to them relating to this portion of Article II. Instead, they cite to the fact a property located at 232 W. Mason Street was subject to nine City inspections in an 18-month period. (ECF No. 45, PageID.1813.) However, the owner of the property, 232 W Mason LLC, is not a plaintiff in this case and has filed a separate lawsuit alleging similar claims. *See 232 W. Mason LLC v. City of Jackson, et al*, Case No. 24-cv-11051. Plaintiffs have not specified how this section is vague ***as applied to them***.

18

Defendants argue that the phrase "in the manner best calculated" is not impermissibly vague, as it is taken directly from the Michigan Housing Code. *See* Mich. Comp. Laws §125.526 ("An inspection shall be conducted in the manner best calculated to secure compliance with this act. . . ."). Further, defendants argue that the terms are clear in the context of the Chapter 14 in its entirety, which requires registration of NOORPR property every three years. (ECF No. 42, PageID.1407.)

The Court finds that Section 14-42 is not vague as applied to plaintiffs' proposed conduct and that, when read in its entirety, the Ordinance includes a sufficient guiding principle such that a person of ordinary intelligence has fair notice of what the Ordinance requires. The term "best calculated" reasonably means inspections conducted to ensure that the requirements of the housing code are met, in line with the inspection regime generally. Consequently, the Court **GRANTS** defendants' motion for summary judgment as to count one.

### 2.    Count Two – Section 14-13

The relevant portion of Section 14-13 reads as follows:

Whenever a residential dwelling or unit used for or intended for residential purposes is ***vacant*** or occupied by anyone other than the owner of record as shown in the records of the city assessor, there shall exist a presumption that the dwelling or a portion of the

19

dwelling is a non-owner occupied residential dwelling or unit regardless of whether monetary compensation is exchanged between the owner and the person(s) occupying the residential dwelling or unit.

(ECF No. 6-2, PageID.321 (emphasis added).)

Plaintiffs argue that this portion of the NOORPR Ordinance is unconstitutionally vague as the term "vacant" is undefined. (ECF No. 1, PageID.64–68.) However, again, plaintiffs have not specified how this section is vague *as applied to them* in terms of either actual or proposed conduct.

The Court finds that Section 14-13 is not vague as plaintiffs have not identified any proposed circumstance under which the term "vacant" has been or could be applied in a vague manner. Further, the term "vacant" has a plain and "ordinary meaning that is not subject to ambiguity." *United States v. Hart*, 635 F.3d 850, 858 (6th Cir. 2011).

Vacant is defined as "[e]mpty; unoccupied" and while courts "have sometimes distinguished vacant from unoccupied, holding that vacant means completely empty while unoccupied means not routinely characterized by the presence of human beings" this distinction is irrelevant here. *Vacant*, *Black's Law Dictionary* (12th ed. 2024). In both senses of the word, the dictionary definition aligns with the definition of

20

"vacant property" as outlined in § 14-402. In short, "vacant" generally means "unoccupied."

For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count two.

### 3.   Count Three – Section 14-72

The relevant portion of Section 14-72 reads as follows:

> Every foundation, wall and roof shall be ***reasonably weatherproof***, ***waterproof*** and rodent-proof, shall be capable of privacy and kept ***in good repair***.

(ECF No. 6-2, PageID.343 (emphasis added).)

This section also includes the following language:

> The roof system shall be free of defects of any kind including, but not limited to, deflection that is not a consequence of, or results in, an unsafe condition, the admission of moisture, damage to structural members, sheathing, flashings, roof covering, ventilation, and drainage systems.

(*Id.*)

Plaintiffs argue that this portion of the Ordinance is unconstitutionally vague as it does not include a standard or definition for the terms "reasonably weatherproof," "waterproof," or "in good repair." (ECF No. 1, PageID.70.) In support of their reading, plaintiffs cite the fact that the structure at 321 West Mason was razed because of

21

the section and that 232 West Mason LLC was charged a fine of $2,000.00 and an additional $320.00 in costs. (ECF No. 1, PageID.71.)

Again, 232 West Mason LLC, is not a plaintiff in this case and, as previously held, plaintiffs cannot recover for any damages incurred relating to 321 West Mason before May 21, 2019, as they are outside of the three-year limitations period. (ECF No. 15, PageID.660.) Plaintiffs have failed to provide any argument or evidence as to how Chapter 14-72 is vague as applied to them, or that it is vague in all circumstances.

Further, courts who have considered the use of terms like "good repair" in the International Property Maintenance Code ("IPMC") have found that they are not vague. *See Mann v. Calumet City*, No. 08 CV 555, 2009 WL 395465, at *14 (N.D. Ill. Feb. 17, 2009), *aff'd*, 588 F.3d 949 (7th Cir. 2009); *Garner Props. & Mgmt. v. Charter Township of Redford*, No. 15-14100, 2017 WL 3412080, at *10 (E.D. Mich. Aug. 8, 2017). This Court declines to take an opposing view and adopts the reasoning applied in *Mann* and *Garner* to Article II. Plaintiffs cite no relevant authority in opposition. For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count three.

## C.    Due Process Violations

Procedural due process requires that a state provide a person with adequate procedural protections before depriving that person of a property or liberty interest. *See Hill v. City of Jackson*, 751 F. App'x 772, 776 (6th Cir. 2018). To establish a violation of procedural due process, a plaintiff must demonstrate:

> 1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment;
> 2) that they were deprived of this protected interest within the meaning of the Due Process Clause; and
> 3) that the state did not afford them adequate procedural rights prior to depriving them of the protected interest.

*Masjid Malcom Shabazz House of Worship v. City of Inkster*, No. 19-11823, 2020 WL 7024876, at *8 (E.D. Mich. Nov. 30, 2020) (citing *Med Corp. Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)) (paragraph breaks inserted).

The only case cited by plaintiffs in support of their due process claims is *Baker v. McCollan*, 443 U.S. 137, 140 (1979), for the proposition that the "initial inquiry in a § 1983 action is whether a plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States." (ECF No. 45, PageID.1819.) The Court again notes it is not

23

obligated to construct plaintiffs' arguments for them and that plaintiffs are represented by counsel. *See McPherson*, 125 F.3d at 995.

### 1.    Count Seven – Procedural Due Process

Plaintiffs argue that the NOORPR Ordinance violated their procedural due process rights by failing to provide adequate notice and opportunity to be heard. (ECF No. 1, PageID.87–90.) Specifically, plaintiffs argue that the failure to provide an appeal process for "any fees" levied by the City violated their right to procedural due process. (ECF No. 1, PageID.88.)

It is unclear to the Court if plaintiffs seek an appeals process to challenge the existence of the fees, the amount of the fees, or the circumstance under which the fees were assessed. To the extent that count seven asserts a claim based on the argument that the plaintiffs are charged a penalty fee for asserting their Fourth Amendment right to a warrant, it is duplicative of count nine, and it is consequently **DISMISSED**. To the extent it challenges the non-existence of an appeals provision generally, it is duplicative of count ten and is consequently **DISMISSED**.

Consequently, the sole remaining possible reading of count seven is that it seeks an appeals process to challenge the existence of the fees generally. However, plaintiffs have not identified a specific fee to which they object or how the fees assessed are outside the City's authority to regulate land use and levy reasonable fees for services provided. *See Halpern 2012, LLC v. City of Center Line*, 404 F. Supp. 3d 1109, 1122 (E.D. Mich. 2019) (*citing Kircher v. City of Ypsilanti*, 712 N.W.2d 738, 744 (Mich. Ct. App. 2005)). If a plaintiff believes a fee schedule set by a municipality is unconstitutional, she is free to file a lawsuit challenging the fee structure. For these reasons, count seven is **DISMISSED** in its entirety.

### 2. Count Eight – Procedural Due Process

Plaintiffs argue that there exists a procedural due process violation because of the City's refusal to issue a certificate of compliance for properties who have complied with all elements of Chapter 14 except for the existence of outstanding unpaid fees. (ECF No. 1, PageID.91–96.) Section 14-42.1 states that upon "a finding that there is not a condition that would ***constitute a violation*** of this article, the certificate of compliance shall be issued." (ECF No. 6-2, PageID.333 (emphasis

25

added).) Section 14-42.1 is within Article II of Chapter 14. It is uncontested that the nonpayment of fees in not one of the specifically enumerated justifications for revocation or denial of a certificate of compliance, as outlined in § 14-42.2.

Article II also includes § 14-43, entitled "inspections fees" which reads in part as follows:

> If the owner fails to pay an invoice for inspection fees directed to him or her under subsection [1] of this section within thirty (30) days, the city may cause the costs reflected in said invoice to be assessed against the premises as a special assessment, pursuant to serial section 273 of the City Charter, and may institute an action against the owner for the collection of said costs in any court of competent jurisdiction. However, the city's attempt to collect such costs by any process shall not invalidate or waive the lien upon the premises.

(ECF No. 6-2, PageID.335.)

Plaintiffs argue that payment of fees is not a "condition that would constitute a violation" such that nonpayment of fees cannot permissibly be the reason for denial of a certificate of compliance. (ECF No. 45, PageID.1818.) However, plaintiffs admit that they owed the City for inspections and those fees were authorized by Chapter 14. (ECF No. 1, PageID.92–93, ¶ 194.)

Plaintiffs have provided no evidence or explanation for how their due process rights were violated when they were required to pay outstanding fees before a certificate of compliance was issued. Further, plaintiffs have provided no relevant authority in support of their position. For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count eight.

### 3.    Count Nine – Procedural Due Process

Count nine alleges a procedural due process violation because of the City's failure to provide written notice of violations within fourteen days of exterior inspections, failure to inform homeowners of their right to appeal, and failure to provide a list of Chapter 14 violations to the homeowners. (ECF No. 1, PageID.96–103.)

First, there has been no evidence presented that inspectors did not notify plaintiffs of exterior violations within fourteen days of conducting exterior only inspections. Second, there is still a right to appeal under Article II and any notice of violations under Article II must inform the owner of their "right to appeal to the building code board of examiners and appeals." (ECF No. 6-2, PageID.336.) For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count nine.

27

### 4.    Unconstitutional Conditions Claim

Further, in count eight and throughout the complaint, plaintiffs allege that they were charged a fee as a penalty for not signing a consent form for a search although this argument is not clearly articulated as a standalone claim. (ECF No. 1, PageID.98 ¶210.)

A similar argument was addressed in *Williams v. City of Jackson*, articulated as an unconstitutional condition claim. *See Williams v. City of Jackson*, No. 21-CV-10749, 2024 WL 3237135 (E.D. Mich. June 27, 2024). "[T]he unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).

However, plaintiffs in this case have not raised an unconstitutional conditions claim and:

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.

*Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see also Stevens v. Mich. State Ct. Admin. Off.*, No. 21-1727, 2022 WL 3500193, at *6 (6th

Cir. Aug. 18, 2022). For that reason, given the fact that plaintiffs are represented by counsel, the Court cannot sua sponte recharacterize their claim or construct their arguments for them, even if the pleadings may gesture to a potentially meritorious unconstitutional conditions claim. There has been no reference to the unconstitutional conditions doctrine, nor has any relevant case law been cited on this issue.

### D.   Count Ten – Appeals Provision

In count ten, plaintiffs argue that Section 14-51 of Article II was amended to remove the appeals provision, in violation of their due process rights. (ECF No. 1, PageID.104–108.) Specifically, plaintiffs object to the fact the title of this section was changed from "Appeal" to "Variance." (ECF No. 42, PageID.1417.)

To the extent count ten is duplicative of count nine, it is **DISMISSED**. As with count nine, this claim misreads Chapter 14, which provides for an appeal to the building code board of examiners. (ECF No. 42-5, PageID.1703.) The fact that the title of Section 14-51 changed does not affect plaintiffs' underlying ability to appeal a decision of the building department. Further, plaintiffs fail to identify any instance in which they were denied the right to appeal any decision of the building department

under this section. For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count ten and dismisses this count in full.

### E.   Qualified Immunity

Plaintiffs have raised individual capacity claims against Matthew Hagerty, Mark M. Porterfield, Brian Taylor, Ricardo John O'Connor, Michael Brandt, Mark Fish, Sven Harrison, Shane LaPorte, Lydell Tanner, David Batterson, William Mills, and Jason Strebe. All other named defendants were previously dismissed from this action by Judge Murphy. (ECF No. 15, PageID.660.) Defendants argue that the claims against the individually named defendants must be dismissed as there is no indication that the named defendants violated a constitutional right and, even if they did, there is no clearly established right. (ECF No. 42, PageID.1419.)

In determining if a defendant is entitled to qualified immunity, the Court conducts two inquiries: (1) if viewing the facts in the light most favorable to the nonmoving party, the named defendant violated a constitutional right; and (2) the constitutional right was clearly

established at the time of the violation. *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). Here, plaintiffs fail on both prongs.

Plaintiffs argue that the individually named defendants are liable because the City has a policy and practice of hiring former police officers to act as building inspectors. (ECF No. 44, PageID.1800.) However, they do not connect this assertion to an alleged constitutional violation. Plaintiffs point to deposition testimony of David Batterson for the proposition that inspectors did not believe that probable cause was required for a warrant. (*See* ECF No. 46-3, PageID.1916–1918.)

However, plaintiffs mischaracterize Batterson's testimony. The relevant excerpt of Batterson's deposition reads as follows:

> Q. All right. Let me ask you, if a nonowner occupied residential property owner demands the city obtain a search warrant to conduct a Chapter 14 inspection, does it require probable cause to obtain that search warrant to conduct that inspection then?
>
> MR. STOKAN: Foundation.
>
> A. No. So we would do an initial inspection and inspect the exterior at that point if the responsible party requested a search warrant, then we would go to that at that point.

(ECF No. 45-2, PageID.1825–1826.)

Further, there is no allegation that a search of plaintiffs' properties was committed without either a warrant or consent. Instead, plaintiffs argue that the warrants were obtained without probable cause. However,

there is no evidence presented to support that assertion or specific warrant which is objected to.

Viewing the testimony in the light most favorable to plaintiffs, Batterson was stating that if an individual requested a search warrant, he would first conduct an initial inspection of the exterior prior to obtaining a search warrant. Even if Batterson testified that no probable cause was required to obtain the administrative warrant, there is no evidence that any search under Chapter 14 was conducted without probable cause.

Further, it is not entirely clear what constitutional violation the *individually named defendants* are alleged to have committed, beyond the enforcement of an allegedly unconstitutional ordinance. There is no allegation that the individually named defendants have committed a search without probable cause or improperly obtained warrants under Chapter 14.

Plaintiffs have pointed to no specific constitutional violation, and further have not established that, whatever the underlying constitutional violation was, that it was clearly established. For the

foregoing reasons, summary judgment is **GRANTED** as to the individually named defendants on the basis of qualified immunity

### F.   Count Thirteen - *Monell* Liability

In count thirteen, plaintiffs assert a *Monell* claim for municipal liability due to the aforementioned alleged unconstitutionality of Chapter 14. (ECF No. 1, PageID.114–117.) However, plaintiffs do not clarify or expand on their theory of *Monell* liability and offer no evidence in support of municipal liability, under any theory. For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count thirteen.

### G.   Count Fourteen - Unjust Enrichment

Finally, plaintiffs argue that the City has been unjustly enriched by the fees collected under Chapter 14. (ECF No. 1, PageID.117–119.) Under Michigan law, to succeed on a claim for unjust enrichment a plaintiff must demonstrate that: (1) the defendant received a benefit from the plaintiff; and (2) it would be inequitable for the defendant to retain that benefit. *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991).

Plaintiffs fail to establish a genuine dispute of material fact as to any of these elements. As discussed above, Chapter 14 is facially valid. Further, there is no evidence that the fees are wholly out of proportion with the expense involved, such that they are merely a subterfuge to obtain increased revenue. *Kircher,* 712 N.W.2d at 744. Plaintiffs have not presented any evidence of a benefit conferred on the City, or of an inequity resulting from the fees charged by the City under Chapter 14.

Further, plaintiffs have provided no evidence that the funds raised under Chapter 14 are used for any other purpose than Chapter 14 enforcement. Ultimately, the City is permitted to charge fees for services it provides. *See Kircher*, 712 N.W.2d at 744; *Kochis v. City of Westland*, 409 F. Supp. 3d 598, 611 (E.D. Mich. 2019). For those reasons, the Court **GRANTS** defendants' motion for summary judgment as to count fourteen.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Court **GRANTS** defendants' motion for summary judgment (ECF No. 42).

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

34

**SO ORDERED.**

<u>**s/ Jonathan J.C. Grey**</u>
JONATHAN J.C. GREY
Dated:  August 25, 2025          UNITED STATES DISTRICT JUDGE

35

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2025.

<u>**s/ S. Osorio**</u>
**Sandra Osorio**
**Case Manager**

36